Glennis Rae WILLIAMS, individually and as Personal Representative of the Estate of Bruce Williams, and as Guardian Ad Litem for Robert Bruce Williams, Richard Ray Williams, Nancy Jo Williams, Vickie Marie Williams, and Mary Ann Williams, minor children, Plaintiffs-Appellants,

v.

WEST JORDAN CITY, a municipal corporation, Robert Stockwell, Glendon H. Leak, Junias H. Burton, Clifton Treglown, Max A. Finlayson, John L. Price, David Schmidt and Judd Parr, jointly and severally in their public and private capacities, Defendants-Appellees.

No. 81–1330.

United States Court of Appeals, Tenth Circuit.

Aug. 10, 1983.

Loni F. DeLand, Salt Lake City, Utah, for plaintiffs-appellants.

Robert L. Stevens, P. Keith Nelson, with him on brief, Salt Lake City, Utah, for defendants-appellees.

Before HOLLOWAY and DOYLE, Circuit Judges, and BROWN *, Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

This appeal is taken from the order of the district court granting defendants' motion for summary judgment. The action was brought under 42 U.S.C. § 1983 by Bruce Williams for termination from his position as a police sergeant with defendant West Jordan City, Utah. The undisputed facts show that on August 1, 1978, Williams was summoned to a meeting with Police Chief Robert Stockwell, who confronted Williams with several allegations of misconduct on duty. Stockwell then suspended Williams from duty. The next day Stockwell met with supervisory officers of the police department to discuss Williams' performance, after which he informed Williams of the meeting and told Williams he would be given an opportunity to resign. Williams requested time to consider his options, and was given until Friday, August 4, 1978. On August 4, 1978, Williams refused to resign, and Stockwell fired him. The following Monday, August 7, 1978, a written statement of the charges of misconduct was delivered to Williams. Williams subse-

* Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, is sitting by designation.

quently demanded a hearing to appeal his termination, and a hearing was had before the City Council on August 23, 1978. Williams' termination was upheld by the Council.

Following the unsuccessful appeal of his termination before the City Council, Williams filed the original complaint in this action. On July 11, 1979, Bruce Williams died as a result of an explosion at his home. An amended complaint was filed naming Williams' wife, Glennis Rae Williams, and their minor children as plaintiffs.

■ Before the due process protections of the Fourteenth Amendment apply in a public employment context, the complainant must show that he possesses a property or liberty interest in such employment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The district court found that plaintiffs could show neither type of interest in Williams' employment with the police department, and that defendants were therefore entitled to judgment as a matter of law. In this appeal, the first issue we must decide is whether the district court erred in concluding that no property interest could be demonstrated. Plaintiffs rely upon three sources for the contention that Williams' had "a legitimate claim of entitlement" to his job rather than a mere "unilateral expectation" of continuing in the position. *Roth,* supra, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. These sources are the Utah Public Safety Retirement Act, § 49–11–1, et seq., Utah Code Annotated 1953; the West Jordan City Personnel Manual and the Police Department Manual; and an implied contract.

■ Property interests ". . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Roth,* ibid. Thus, whether Bruce Williams had a property interest in his employment depends upon whether one was created by or under Utah law. *Bishop v. Wood,* 426 U.S. 341, at 344, 96 S.Ct. 2074, at 2077, 48 L.Ed.2d 684, at 690 (1976). Plaintiffs do not contend that Williams was employed pursuant to an express contract, nor do they assert a property right arose directly from a state statute or city ordinance. Instead, they assert that the Utah Public Safety Retirement Act indirectly assured them of continuing employment by providing for retirement benefits to Williams and death benefits to his wife and children, the present plaintiffs, if they survived him. Plaintiffs point to no specific provision showing in what way the existence of a retirement system for employees effects a legitimate claim of entitlement to continued employment. Consequently, we agree with the district court that the retirement act created no property right in present employment, but only certain benefits *if* employment should continue until death or retirement.

■ Second, plaintiffs rely on a city-wide personnel manual and a police department manual, which they say contain rules establishing a property right in Williams. Clearly, rules and "mutually explicit understandings" can create property interests by means of an implied contract. *Bishop,* ibid., citing in footnote 6 *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Again, we are not aided by plaintiffs' failure to refer to any particular provision of either manual. Our own review of the manuals reveals the two pertinent sections upon which plaintiffs must rely. The city personnel manual lists thirteen grounds for immediate dismissal, at least two of which were charged against Williams, and in a section entitled "Dismissal," provides as follows:

> The Department Head may, with the concurrence of the City Manager, dismiss for cause any permanent employee in a department by delivering a written statement of reasons to the employee concerned, with a copy to the City Council. Upon receipt of such written statement of dismissal, the employee may appeal through formal grievance procedures.

The police manual provides for an appeal to the Merit Commission after disciplinary measures, and states in a paragraph headed "Removal or Reduction":

A permanent employee may be discharged, suspended or reduced in rank only after the person to be discharged, suspended or reduced has been presented, in writing, with reasons for such action. Such reasons shall state the specific grounds and particular facts upon which the discharge, suspension or reduction is based, and the person affected shall be allowed a reasonable time, not to exceed five (5) days, from date of presentation to him in which to reply thereto in writing. . . .

We have not found any decisions by Utah state courts which are helpful in determining whether an implied contract existed in this employment situation, nor have any been brought to our attention. Not surprisingly, these particular manuals have not been construed by the courts of the state. The Supreme Court of Utah has stated:

> The general rule concerning personal employment contracts is, in the absence of some further express or implied stipulation as to the duration of the employment or of a good consideration in addition to the services contracted to be rendered, the contract is no more than an indefinite general hiring which is terminable at the will of either party. . . .
>
> When an individual is hired for an indefinite time, he has no right of action against his employer for breach of the employment contract upon being discharged.

*Bihlmaier v. Carson,* 603 P.2d 790, at 792 (Utah 1979), footnotes omitted. It is our practice to accord extraordinary force on appeal to the ". . . views and findings of a federal district judge . . . involving the interpretation and application of the law of the state of the federal trial judge's residence . . . where there are no decisions on point or none which provide clear precedent." *Joyce v. Davis,* 539 F.2d 1262, at 1264–1265 (10th Cir.1976), citations omitted. See also *Bishop,* supra, 426 U.S. at 345–347, 96 S.Ct. at 2077–2078, 48 L.Ed.2d at 690–691.

The district court in the present case held that the personnel manual did not confer a property right under Utah law. As in *Bishop,* supra, the personnel manual rule could fairly be read as creating entitlement to continued employment; that is, it could be reasonably interpreted to mean that an employee cannot be discharged absent cause. "However, such a reading is not the only possible interpretation; the [rule] may also be construed as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures." *Bishop,* supra, 426 U.S. at 345, 96 S.Ct. at 2077, 48 L.Ed.2d at 690, footnote omitted. We have found nothing which would show this latter construction to be untenable under Utah law, and we therefore accept the district court's conclusion.

■ The district court apparently did not consider whether the police manual created a property interest, finding that it had not been formally adopted. Whether this manual was formally adopted was not the relevant inquiry, however. Lack of formal adoption of rules or policies would not necessarily prevent a property interest from arising thereunder. Existing rules, understandings, and policies and practices can be sufficient. *Roth,* supra; *Perry,* supra. Thus, the relevant issue of fact was whether the police manual, and rules and policies therein, existed and were in actual use. This issue was in dispute, and if material, could not properly have been considered on a motion for summary judgment. Rule 56(c), F.R.Civ.P. Even so, we do not find it necessary to reverse on this point and remand. In this case, whether the police manual rule in question was an actual practice or policy is not material. We must assume for purposes of defendants' motion that plaintiffs' claim is true, i.e., that the police manual rule was an established policy and one of the mutually understood circumstances of employment with the police department. Still, this would not be sufficient to create a property interest in light of the district court's determination that the personnel manual rule showed no property right. Other than the provision in the police manual for specificity of grounds on

which the discharge is based, the two manuals are substantially alike. If there is a more strongly worded rule, it is the one in the personnel manual: A more persuasive argument for a property right could be made under the "dismiss for cause" language of that rule. The significant provisions of the rule in the police manual are all contained in the personnel manual rule as well. It follows that the district court's conclusion, which we have accepted, that no property interest existed by virtue of the personnel manual rule necessarily foreclosed a finding of a property interest created by the police manual rule.

Plaintiffs' third contention in support of a property interest is labeled "implied contract." Their argument consists of one sentence, as follows:

A *de facto* tenure system exists fostered by the State Retirement Act, the West Jordan manuals, and the understandings and expectations reasonably relied upon by [Williams] in working more than six years, being promoted to sergeant and relying upon the representations made when he was hired.

We have already discussed the state retirement act and the manuals. Plaintiffs allege no specific "understandings" or "representations" other than these. Without such factual support, the bare assertion that other unspecified circumstances existed which created an implied contract will not withstand a motion for summary judgment. Rule 56(e), F.R.Civ.P. As to Williams' expectations from six years in the job and promotion, these cannot, standing alone, create a property interest under the Fourteenth Amendment. *Roth,* supra.

Having determined that summary judgment was appropriately granted on the property interest theory of plaintiffs' action, we must now consider the liberty interest claim. The district court held that there was no liberty interest in connection with Williams' firing which triggered due process protections. We are not required to review whether or not such a liberty interest existed. Assuming without deciding that a liberty interest arose from the circumstances surrounding Williams' dismissal, we nevertheless conclude that plaintiffs were not entitled to relief. Where the constitutional interest affected is liberty rather than property, the purpose of a due process hearing is solely to provide the person an opportunity to refute the charges and clear his name, not to recapture the previous employment. *Roth,* supra, 408 U.S. at 573, footnote 12 and accompanying text, 92 S.Ct. at 2707, footnote 12, 33 L.Ed.2d at 558–559; *McGhee v. Draper,* 639 F.2d 639, at 645 (10th Cir.1981). But if the employee does not challenge the substantial truth of the charges, no hearing is necessary. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

> [I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation. Nowhere in his pleadings or elsewhere has respondent affirmatively asserted that the report of the apparent suicide attempt was substantially false.... [T]he absence of any such allegation ... is fatal to respondent's claim under the Due Process Clause that he should have been given a hearing.

*Codd,* supra, 429 U.S. at 627, 97 S.Ct. at 884, 51 L.Ed.2d at 96.

*Codd v. Velger* is exactly on point with the case at bar. Here there is no dispute as to whether any of the incidents forming the bases for the charges against Williams occurred. Williams' answers to interrogatories reveal that he never challenged the substantial truth of the charges, only their sufficiency to support his dismissal. Without a "Fourteenth Amendment property interest in continued employment, the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question." *Codd,* supra, 429 U.S. at 628, 97 S.Ct. at 884, 51 L.Ed.2d at 97, footnote omitted. Under *Codd,* plaintiffs could not show any facts entitling them to recover for deprivation of a liberty interest. Without denial of the

substantial truth of the charges, they could not show harm even if no hearing had been accorded. Here, of course, Williams did have a post-termination hearing before the City Council. Because no hearing at all was required, we need not discuss other matters concerning the sufficiency of the hearing which was held. Summary judgment was proper on the liberty claim because there is, again, no genuine issue as to any material fact, and *Codd,* supra, establishes that defendants are entitled to judgment as a matter of law. Rule 56(c), F.R. Civ.P.

Because of our holdings on the two issues discussed, we find it unnecessary to examine the other issues raised in this appeal. The judgment of the district court is AFFIRMED.