T. Neal MORRIS, Plaintiff,

v.

The CITY OF DANVILLE, Virginia, Charles F. Church, and William H. Fuller, III, Defendants.

Civ. A. No. 83–0150–D.

United States District Court,
W.D. Virginia,
Danville Division.

Feb. 3, 1984.

John S. Barr, Esq. Maloney, Yeatts & Barr, Richmond, Va., for plaintiff.

Gary L. Bengston, Danville, Va., for City of Danville & Church.

D. Eugene Webb, Jr., Mays, Valentine, Davenport & Moore, Richmond, Va., for Fuller.

## MEMORANDUM OPINION

KISER, District Judge.

Plaintiff, T. Neal Morris (Morris), has filed this civil rights action pursuant to 42 U.S.C. § 1983 against the City of Danville, Virginia (City), City Manager Charles F. Church (Church), and Commonwealth's Attorney William H. Fuller, III (Fuller). He alleges a deprivation of his federal and state [1] constitutional rights as a result of his dismissal from employment as police chief of the City of Danville. Morris asserts that the City refused to allow him to appeal his dismissal from employment through its grievance procedure in violation of the City's personnel regulations (Complaint, Count I); that Church's decision to discharge him was made in bad faith, was arbitrary, capricious and unsupported by law or fact (Count II); and that Church failed to accord him a fair post-termination hearing before an impartial tribunal, resulting in deprival of the property interest in his position as police chief without due process of law (Count II). Morris further maintains that the publication of the investigative report by the City, Church and Fuller constituted a denial of a liberty interest without due process (Count III) and that Church discharged him as a consequence of Morris' exercise of his right to freedom of speech guaranteed by the First Amendment to the United States Constitution (Count IV). He seeks damages as well as declaratory and injunctive relief. Jurisdiction is conferred on this Court by virtue of 28 U.S.C. § 1343. This case is before the Court on cross motions for summary

---

**1.** As to Morris' allegations that he was deprived of due process of law in violation of both the United States and Virginia Constitutions, it would appear that due to the almost exact similarity in language of the two sections, the state due process provision is commensurate with and no broader than the analogous provision in the United States Constitution, the Due Process Clause of the Fourteenth Amendment.

judgment pursuant to Fed.R.Civ.P. 12(b) and 56. After thorough briefing and argument by all parties, the matter is now ripe for disposition.

## I.

For purposes of these motions, the following facts set forth in the pleadings, affidavits, and exhibits are pertinent. Morris was continuously employed with the Danville Police Department from 1959 until his dismissal on September 12, 1983. In 1971, he was appointed police chief. As a result of the reorganization of the municipal structure of Danville, a department of public safety comprised of the police and fire departments was created the next year. Morris became director of the police division and was answerable to either the director of public safety, or in the event of a vacancy in that position, directly to the city manager. In fact, the position of director of public safety has never been filled.

In a news release dated January 4, 1983, the City announced that allegations of misconduct had been made against Morris; that Church had turned the matter over to the office of the commonwealth's attorney for investigation of possible criminal violations; that Morris would remain on active duty as police chief during the investigation; and that there would be no further comment until Fuller completed his investigation.

After a period of some seven months, Fuller presented his investigative report to Church on July 12, 1983. That same day, Church confronted Morris with the report, gave him an opportunity to read and discuss it, and then informed him that he would be dismissed as police chief. In a follow-up letter bearing the same date, Church explained the reasons for his decision and formally notified Morris that he was suspended without pay, relieved of his duties as police chief effective immediately, and permanently discharged as of July 19, 1983. Church also stated that his action was final unless Morris requested an opportunity to refute the basis of the dismissal in a hearing before Church. In another letter dated July 29, 1983, Church notified Morris of an additional reason for the dismissal.

On July 13, 1983, Fuller released to the local news media selected portions of his investigative report. On July 19, 1983, Morris requested the hearing before Church. For six days, August 25–28 and September 2–3, 1983, a closed hearing was held before Church during which time Morris, who was represented by counsel, presented numerous witnesses and exhibits.

Church informed Morris by letter on September 12, 1983, that the evidence presented on his behalf at the hearing was ample justification for the dismissal; that the substance of the investigative report remained uncontradicted; and that if anything, the report was strengthened by the evidence received at the hearing. Morris next requested an appeal of Church's decision before the three-member panel provided in the City's personnel regulations, but this was denied by Church. Then, on September 20, 1983, Morris filed this action.

## II.

### A.

In his motion for summary judgment, Fuller maintains, *inter alia*, that he is legally incapable of depriving Morris of any liberty interest.[2] He argues that, even assuming for argument that his conduct in releasing the investigative report constitutes a defamation actionable under Virginia law, such publication of a defamatory statement could not give rise to a claim actionable under the Fourteenth Amendment because he was not the employer who terminated Morris' employment. More-

---

**2.** Fuller also argues that even if he is a proper Defendant to this action: (1) Morris has received from him as much relief as Morris could possibly be entitled; and (2) he is immune from this civil damages suit under § 1983. In light of the Court's disposition of his motion, these issues will not be addressed in this opinion.

over, being only a third-party non-employer, Fuller contends that he would not be in a position to give Morris a name-clearing hearing.

Morris responds that although Fuller was not the person who terminated his employment as police chief, Fuller remains liable for any injury to his reputation resulting from the publication of the report. Morris, however, has failed to cite either on brief or at oral argument, any authority for his proposition that a person who has been fired by his governmental employer is entitled to recover damages in a § 1983 action against a third-party non-employer who allegedly defamed him.

From my reading of the record, the case at bar falls squarely within the rule of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and must be decided on its authority. There, a newspaper photographer who had been arrested on a charge of shoplifting that was subsequently dismissed brought a § 1983 action against several police chiefs for distributing to merchants a "flyer" bearing his name and photograph under the heading of "active shoplifters".

At the outset, Justice Rehnquist, speaking for the *Paul* majority, stated that the complaint appeared "to state a classical claim for defamation actionable in the courts of virtually every State." *Id.* at 697, 96 S.Ct. at 1159. In a detailed discussion, he went on to find the due process claim to be without merit. Because, in my opinion, the *Paul v. Davis* reasoning applies with equal force to the facts presented in the instant case, I turn to that analysis.

First, by failing to point to any specific federal constitutional guarantee safeguarding the interest claimed to have been invaded, the plaintiff was apparently asking for an expansive reading of the Fourteenth Amendment's Due Process Clause and § 1983 to cover the alleged defamation that had been inflicted by the defendant public employees. Noting that such a construction of due process would relegate the Fourteenth Amendment to being "a font of

tort law to be superimposed upon whatever systems may already be administered by the States" and that the civil rights statutes were never intended to become a body of general federal tort law, the claim was held to be beyond the scope of § 1983 and federal procedural due process guarantees. *Id.* at 701, 96 S.Ct. at 1160.

Next, the Supreme Court considered whether the alleged defamation by the defendant state officials, standing alone and apart from any other governmental action affecting the complaining party, stated an actionable claim under § 1983 and the Due Process Clause. After examining its line of cases dealing with protectable liberty interests, this question was answered in the negative.

■ Every defamation by a state official, without more, does not rise to level of being a deprivation of liberty within the meaning of the Due Process Clause simply because the state is involved. *Id.* at 698, 96 S.Ct. at 1159. The state, in its capacity as employer, must perpetrate the defamation during the course of public employee's termination from employment. *Id.* at 708–710, 96 S.Ct. at 1164–65. In other words, unless the state as employer is responsible for the defamatory statement which injures the discharged employee, a claim under § 1983 and the Fourteenth Amendment will not lie.

■ Thus, as the following language from *Paul* so succinctly points out, an alleged defamation committed by a state or local official, standing alone, is at best only a state law tort claim that should more appropriately be brought in state, not federal, court:

"... [I]nterest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal

law, nor has it worked any change of [appellant's] status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law.

[Appellant] in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, [appellee's] defamatory publications, however seriously they may have harmed [appellant's] reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."

*Id.* at 712, 96 S.Ct. at 1165–66.

Subsequent decisions from both the Supreme Court and lower federal courts have reaffirmed the principles enunciated in *Paul v. Davis, supra.*

Although not cited by either party, *Waller v. Cahalan,* 542 F.2d 681, 683–4 (6th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1647, 52 L.Ed.2d 357 (1977), bears a similarity to the present case. There, a state prosecuting attorney sent allegedly defamatory letters to a legislative committee with copies to the press. As far as the civil rights claims were concerned, *Paul v. Davis, supra,* was found to be controlling, and these facts were deemed insufficient to state a claim under § 1983.

One year after *Paul* in *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (*per curiam*), the Court stated: "Only if the *employer* creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a [due process] hearing required. *Board of Regents v. Roth,* 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548] (1972); *Bishop v. Wood,* 426 U.S. 341 [96 S.Ct. 2074, 48 L.Ed.2d 684] (1976)." *Id.* at 628, 97 S.Ct. at 884 (Emphasis added.)

Affirming dismissal of an action which alleged deprivation of procedural due process by discharge from employment under certain stigmatizing conditions, the Eighth Circuit, in *Pollock v. Baxter Manor Nursing Home,* 706 F.2d 236 (8th Cir.1983) (*per curiam*), quoted with approval the following language from the district court opinion of Chief Judge Waters:

Before a 'liberty' interest is implicated, in employee discharge cases however, there must be publication of the reasons for termination, the *publication must occur at the hands of the governmental employer,* the charges must be defamatory, and the charges must be false. *Buhr v. Buffalo Public School Dist.,* 509 F.2d 1196 (8th Cir.1974); *Cato v. Collins,* 539 F.2d 656 (8th Cir.1976); *Codd v. Velger,* 429 U.S. 624 [97 S.Ct. 882, 51 L.Ed.2d 92] (1977); *Seal v. Pryor,* 670 F.2d 96 (8th Cir.1982).

*Id.* at 237 [quoting *Pollock v. Baxter Manor Nursing Home,* 536 F.Supp. 673, 680 (W.D.Ark.1982); emphasis supplied].

█ From my reading of the foregoing cases as well as Morris' inability to direct the Court's attention to any specific federal constitutional guarantee safeguarding the interest he asserts was invaded by Fuller, I conclude that there is no interference with a constitutionally protected liberty interest here by Fuller because even though he may have caused some injury to Morris' reputation by releasing the report, Fuller still was not the governmental employer who terminated Morris from employment as police chief. Having determined Defendant Fuller's motion for summary judgment to be well-taken, it is hereby GRANTED.

### B.

In Count III of his Complaint, Morris maintains that the release to the news media of portions of the investigative report, being a violation of city ordinances, regulations, and established personnel procedures, constitutes a deprivation of liberty interest without due process of law.

*Codd v. Velger, supra,* held that a discharged public employee who complains that he has been stigmatized by the release of certain information in the course of his termination from employment must affirm-

atively assert as one of the essential elements of his case that the information was in fact substantially false. In that case, because there was no issue raised about the substantial accuracy of the report in question, the Supreme Court concluded no hearing could afford the dismissed employee the result he hoped to achieve, namely the opportunity to refute the charge and clear his name. 429 U.S. at 627–8, 97 S.Ct. at 884.

■ Turning to the case at bar, Morris likewise has at no stage of this litigation affirmatively asserted that the information contained in the portions of the investigative report released to the news media were substantially inaccurate or false. The closest he has come is to allege that he was deprived of due process as a consequence of "wrongful publication" of the report. This is simply insufficient to raise an issue about the accuracy of the information released to the news media. Under *Codd v. Velger, supra,* Morris has not made out a valid claim under the Fourteenth Amendment that he was harmed by the publication of the report.

For these reasons, Count III of the Complaint is DISMISSED pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Morris, however, will be granted fifteen (15) days leave to amend to file a supplement to this Count of his Complaint. *See* Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

### III.

### A.

In his motion for partial summary judgment as to Count I, Morris contends that the City[3] and Church deprived him of a property interest without due process of law when he was prohibited from appealing his dismissal from employment through the grievance procedure provided by the City's personnel regulations.

In response, the City and Church maintain that Morris was merely an employee at will, and as such enjoyed no property interest in his position as police chief. Alternatively, even if Morris possessed a property interest in continued employment, they have afforded him all the due process to which he is entitled.

On June 29, 1972, the Supreme Court handed down two leading cases dealing with procedural due process guarantees in the context of a dismissal from public employment. In *Board of Regents v. Roth, supra,* an untenured university professor who had been hired for a fixed one-year term complained of a deprivation of his constitutional right to a statement of reasons and a hearing on the university's decision not to rehire him for another year. Since the Fourteenth Amendment's guarantee of procedural due process of law applies only to certain interests in liberty and property, the *Roth* court initially inquired whether any liberty or property interests had been implicated. 408 U.S. at 570–571, 92 S.Ct. at 2705–06.

As to protected property interests, certain attributes were identified:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> *Property interests, of course,* are *not created by the Constitution. Rather,*

---

**3.** Under *Monell v. Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), local governments such as the City of Danville may be sued directly under § 1983 for monetary, declaratory, or injunctive relief, provided the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision adopted and promulgated by that body's officers."

*they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.*

*Id.* at 577, 92 S.Ct. at 2709 (Emphasis added.)

In *Roth,* due to the absence of any contractual provisions, state statute or university policy securing a possible claim of entitlement to re-employment, the Court concluded that no protectable property interest had been established.

A property interest safeguarded by due process was, however, found in the companion case, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). There, the professor, a ten-year veteran of the state college system, had been employed for four successive years under a series of one year contracts. When his employment contract was not renewed for the fifth year, he filed suit, alleging that he was not provided an opportunity for a hearing to challenge the basis of this nonrenewal.

Unlike his counterpart in *Roth,* the plaintiff in *Sindermann* alleged that his interest in continued employment as a college professor was secured by an understanding fostered by the college administration, namely a *de facto* tenure program. He claimed legitimate reliance upon certain provisions in the college's official faculty guide as well as state guidelines which guaranteed continued employment as a faculty member provided that his teaching services were satisfactory and that there was no "adequate cause for dismissal". *Id.* at 599–601, 92 S.Ct. at 2698–99.

Recognizing that allegations of the existence of rules and understandings supporting a claim of entitlement to continued employment absent "adequate cause" and accordingly a property interest had been properly plead, the Court held that the professor should be given an opportunity to show the legitimacy of his claim, which, if proven, would obligate the college adminis-

tration to afford him a hearing where he could challenge the sufficiency of his nonretention. *Id.* at 603, 92 S.Ct. at 2700.

Before applying the principles enunciated in *Roth* and *Sindermann* to the facts of this case, a detailed analysis of relevant city ordinances and personnel regulations must be undertaken in order to determine whether Morris' interest in continued employment as police chief falls within the Fourteenth Amendment's protection of property. Following oral argument, in a letter dated December 22, 1983, I raised certain concerns of my own regarding the interrelation of these ordinances and regulations and invited counsel to address these. Having carefully considered these responses, I find basically three groups of documents to be relevant to Morris' property interest claim.

### 1. *The ordinances setting forth the "Grievance Procedure for the City of Danville".*

The grievance procedure was adopted by Ordinance 78–12.5 (Dec. 12, 1978). That ordinance states that the procedure became a part of the personnel system which was retitled the "Personnel System of the City of Danville, Including the Position Classification Plan, Uniform Compensation Plan, Grievance Procedure and Other Provisions Relating to Personnel Administration." It was enacted pursuant to Va.Code § 15.1–7.1 and –7.2 which mandates that localities establish a grievance procedure in compliance with the minimal provisions of the state grievance procedure set forth in Code § 2.1–114.5:1. Expressly included among grievable complaints are "disciplinary action involving dismissal." In a section entitled *Reservation of Management Rights,* the city's existing right to "dismiss employees for proper cause", provided it is not "exercised in any arbitrary or capricious manner", is reaffirmed. All permanent non-probationary city employees are entitled to file grievances, while "heads of city departments, divisions and bureaus" are not. A detailed four-step grievance procedure culminating in a three-member panel

hearing is set forth. The decision of the panel is by majority vote of its members and shall be final and binding. The last ordinance specifically making reference to the grievance procedure was Ordinance 79–1.5 (Jan. 9, 1979) which amended the provisions dealing with the composition of the panel.

2. *The ordinances adopting the various personnel systems.*

In Ordinance 80–6.13 (June 23, 1980), City Council adopted and incorporated the attached "Personnel System of the City of Danville Including the Position Classification Plan, Uniform Compensation Plan and Other Provisions Relating to Personnel Administration." It being the intent of the council that the new personnel system control all matters to which it pertained, any conflicting ordinances were expressly repealed.

The personnel system provides that "[c]onduct detrimental to the efficient, effective and responsible operation of the City, its departments, employees or agencies, to the safety and well-being of the City employees or the general public, to the goodwill and reputation of the City or the public interest and welfare, shall be punishable by … dismissal.… The City Manager by administrative regulation shall prescribe such offenses and the penalties therefor and shall establish a fair and just procedure for the administration thereof." Section I, Paragraph H, *Discipline.*

Notably absent from the new system were any provisions dealing with the grievance procedure. In his affidavit, City Attorney W. Ewell Barr explains this absence by submitting that the personnel system has never contained all ordinances dealing with personnel and that the grievance procedure was merely removed by Ordinance 80.6.13. Still, it would appear that the personnel system adopted by ordinance on June 23, 1980, repealed the prior personnel system, Ordinance 78–6.12 (June 15, 1978), as well as the grievance procedure provisions, Ordinances 78–12.5 and 79–1.5.

As Morris points out, however, whether the grievance procedure was actually repealed by subsequent ordinance is of little significance for our purposes. The important thing for our purposes is that the new personnel system, unlike the grievance procedure, did not purport to exclude department heads and division heads. Section I, Paragraph E, *Personnel Excluded from the Personnel System.* Moreover, the personnel system enacted on June 23, 1980, specifically Section I, Paragraph H, controlled matters of discipline. Each personnel system that was later adopted by ordinance contains identical provisions that do not exclude the position of police chief from the personnel system and that provide the city manager with authority to "prescribe and promulgate rules and regulations governing the administration of the personnel system" as well as the discipline of employees. Ordinance 81–6.12 (June 26, 1981), Section I, Paragraphs D and E; Ordinance 82–6.11 (June 30, 1982), Section I, Paragraphs C and D; Ordinance 83–6.13 (June 14, 1983), Section I, Paragraphs C and D. Thus, as of July 1, 1980, Morris was clearly covered by the personnel system.

The personnel system in effect on September 12, 1983, the date of Morris' dismissal, contains the following items that are pertinent to our inquiry:

*Dismissal*—The termination of an employee's service for just cause or reason.

*Full-Time Employee*—A person, employed in a position, who is scheduled to work a prescribed work week.

*Permanent Employee*—A Person employed full-time on a regular and continual basis for the City; may include persons employed under a local, state or federal grant.

*Probationary Employee*—An employee, other than a temporary, part-time or seasonal employee, who is within the prescribed probationary period of employment.

Section II, *Definitions.*

3. *The "Regulations for the Administration of the Personnel System of the City of Danville".*

These regulations were established pursuant to Ordinance 82–6.11 (June 30, 1982)

and amended by Ordinance 83–6.13 (June 14, 1983). Section I, Paragraph B. They set forth the principles and procedures that serve as a basis for the administration of the personnel system, including the discipline of city employees. Section I, Paragraph A. The city manager, as chief personnel officer, is responsible for the administration, interpretation and application of the personnel system. Section I, Paragraph B. The police chief is not excluded from the provisions of the regulations. Section I, Paragraph D. Definitions of the terms dismissal, full-time employee, permanent employee, and probationary employee are identical to the corresponding definitions contained in the ordinances. Section II, *Definitions;* Section III, Paragraph C, *Types of Appointment.*

■ Responsibility for dismissal of permanent, non-probationary employees is vested solely with the city manager, who may "for just cause or reason", dismiss any city employee.[4] Section VIII, Paragraph 5a. A department head, upon determining that dismissal from employment is justified, shall suspend the employee in question without pay and make recommendations for dismissal to the city manager. *Id.* Employees may appeal this recommended dismissal and request a hearing before the city manager. *Id.* Such hearing shall be closed. *Id.* Temporary, part-time, seasonal, emergency, or probationary employees do not have the same rights to employment as permanent, non-probationary employees. Section VIII, Paragraph 5b. "Any dismissed permanent, non-probationary employee, may appeal through the grievance procedure". Section VIII, Paragraph D. The grievance procedure, adopted by and amended by ordinance, is established separate from the regulations.

Section XIV. Lastly, the regulations shall apply to all city employees, unless excluded by either the regulations or ordinances effective January 1, 1981, and remain in effect as revised. Section XIII.

### B.

■ As to Morris' contention that he possessed a property interest in continued employment, I find that he possessed such a protectable interest in his position as police chief. By referring to the various ordinances and regulations outlined above, there is no question that Morris was a permanent, full-time, non-probationary employee of the City and that he could not be dismissed except for "just cause or reason". These provisions are clearly the type of rules and understanding which define and support a legitimate claim of entitlement to continued employment. *Roth, supra; Sindermann, supra.* In this case, they are the source from which Morris derives his property interest.

Having established that Morris has a property interest in continued employment protected by the Fourteenth Amendment, the next issue is whether he was afforded adequate procedural due process when he was permanently discharged on September 12, 1983.

■ The fundamental requirements of due process of law include notice[5] and a meaningful opportunity to be heard. *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Beyond this, the exact procedural protections guaranteed by due process vary according to the specific factual context presented. *Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960).

---

**4.** The City and Church insist that the discipline provisions of the personnel regulations were never formally adopted by city council and cannot be the source of Morris' alleged property interest. I disagree. Whether these particular sections were adopted by ordinance is not the critical inquiry. Lack of formal adoption of rules or policies does not prevent the creation of a property interest. Existing rules, understanding policies, and practices can be sufficient

under *Roth* and *Sindermann. See Williams v. West Jordan City,* 714 F.2d 1017, 1020 (10th Cir.1983). The primary focus is whether these regulations were in existence and actual use. This certainly was the case here.

**5.** There is no question that Morris has received adequate notice of the reasons given for his dismissal.

For example, when confronted with a similar controversy arising out of the discharge of a public employee who, like Morris, asserted a property interest in continued employment, the court in *Detweiler v. Comm. of Va. Dept. of Rehab. Services,* 705 F.2d 557, 560 (4th Cir.1983), explained:

> Our inquiry into the requirements of due process in this context is facilitated by *Mathews v. Eldridge,* 424 U.S. 319, 334 [96 S.Ct. 893, 902, 47 L.Ed.2d 18] (1976), where the Court said:
>
> > [I]n *Arnett v. Kennedy* [416 U.S. 134, 142–146, 94 S.Ct. 1633, 1638–40, 40 L.Ed.2d 15 (1974)] we sustained the validity of procedures by which a federal employee could be dismissed for cause. They included notice of the action sought, a copy of the charge, reasonable time for filing a written response, and an opportunity for an oral appearance. Following dismissal, an evidentiary hearing was provided.

In that case, the Fourth Circuit concluded that Detweiler had received sufficient procedural due process protections under the applicable statutory and regulatory provisions, namely written notice of disciplinary infractions, opportunity to discuss these charges with his superiors and ultimately a post discharge hearing before an impartial grievance panel. Critical to the court's analysis was the authority of the hearing panel to order reinstatement with backpay and benefits if the discharge was found to be unjustified as well as the fact that the panel decision was final and binding on all parties concerned. *Id.* at 559–560.

Dismissal of the complaint was nevertheless vacated and the case was remanded for further proceedings because Detweiler had alleged a state official's intimidation of a prospective witness infringed upon his constitutional right to a hearing. Noting that the full evidentiary hearing in *Arnett* was designed to "minimize the risk of error in the initial removal decision, the appellate court held that if proven, the allegation would entitle Detweiler to a rehearing by the panel that comports with due process.

*Id.* at 561–2, quoting *Arnett, supra,* 416 U.S. at 170, 94 S.Ct. at 1652 (Powell, J., concurring).

■ A vital component of the right to a meaningful hearing guaranteed by due process is an impartial decision maker. *See Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1969); *Bowens v. N.C. Dept. of Human Resources,* 710 F.2d 1015, 1020 (4th Cir.1983); *Cain v. Com. of Virginia,* 574 F.Supp. 559 (W.D.Va.1983).

In this regard, I find the recent decision in *Cain v. Com. of Va., supra,* to be most instructive. There, a state agency employee alleged that due process was violated when he was denied a right to an impartial tribunal in a grievance procedure following his dismissal. The gravamen of his complaint was the presence on the three-member panel of an agency supervisor who not only had participated in the decision to terminate Cain but also had recommended the dismissal to Cain's immediate supervisors.

In holding that procedural due process as set forth in *Detweiler, Bowens,* and *Goldberg,* had not been properly complied with, Judge Williams reasoned that because the individual in question had already made up his mind to fire Cain long before any panel or hearing was ever developed, he lacked impartiality and, therefore, should not have been allowed to participate in the decision-making process of the post-termination panel hearing. *Id.* at 562.

■ Based on the principles discussed above, I must conclude that Morris has been denied procedural due process in this case. Specifically, Morris was not afforded the post-discharge hearing with adequate remedy before an impartial decision maker called for by the Fourteenth Amendment. Regardless of how lavishly the evidentiary hearing in this case is described, the plain fact remains that it was tainted. City Manager Church, the very person who first sought Morris' dismissal, can hardly be considered an impartial decision maker. Indeed, as was pointed out in the *Cain*

decision, it would be difficult to conceive of a situation presenting a more biased decision maker. Likewise, it would seem that any attempt by Morris to challenge the sufficiency of his discharge was, at best, merely an exercise in futility.

 In terms of what relief[6] is appropriate in this case, Morris is entitled to a *de novo* hearing before an impartial decision maker who has the power to reinstate him to his original position with full backpay. The City's grievance procedure offers such a mechanism. It provides for selection of a three member panel which by majority vote may make a final written decision that is binding on all parties. Moreover, under these provisions both the City and Morris will be permitted to call, examine and cross-examine witnesses, be represented by legal counsel and present relevant evidence in support of their respective positions. This new hearing shall be *de novo*[7] and, at the request of either the City or Morris, shall be a public hearing. The issue to be decided by the panel will be as follows: was Morris dismissed as police chief for the City of Danville for just cause or reason?

Accordingly, injunctive relief providing Morris with this new *de novo* post-termination hearing will be GRANTED. Morris' motion for summary judgment as to Count I will be GRANTED. The motion for summary judgment filed by the City and Church will be DENIED.

AN APPROPRIATE ORDER WILL ISSUE.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is

ADJUDGED AND ORDERED as follows:

1. Defendant Fuller's Motion for Summary Judgment shall be, and it hereby is, GRANTED;

2. Count III of the Complaint shall be, and it hereby is, DISMISSED. Plaintiff, however, will be GRANTED fifteen (15) days leave to amend to file a supplement to Count III;

3. The Motion for Summary Judgment filed by Defendants City of Danville and Church shall be, and it hereby is, DENIED;

4. Plaintiff's Motion for Partial Summary Judgment on Count I of the Complaint shall be, and it hereby is, GRANTED; and

5. Defendants City of Danville and Church shall be, and hereby are, ENJOINED to grant Plaintiff a new *de novo* hearing before an impartial decision-making body with adequate remedy fashioned after the three member panel provided for in the City's grievance procedure.

The Clerk is directed to send a certified copy of this Order, and the accompanying Memorandum Opinion, to all counsel of record.

6. In his prayer for relief, Morris asks that he be permitted to appeal his dismissal through the grievance procedure as provided in the City's personnel regulations, or, in the alternative, that he receive a meaningful post-discharge hearing. Having determined that Morris has not been afforded procedural due process and that he is entitled to a hearing, I find it unnecessary to decide the appeal issue, namely whether under the City's personnel regulations Morris is entitled to appeal his dismissal through the grievance procedure. The practical effect of my ruling today is to give Morris essentially the same relief he would have had had he been allowed to *appeal* to the three member grievance panel. Nonetheless, I point out once again that it is not the appeal requested by Morris, but merely a new *de novo* hearing fashioned after certain provisions of the grievance procedure.

7. I emphasize that any person involved in any earlier phase of the decision to terminate Morris shall not be eligible to serve on the three member panel. Needless to say, this includes Defendant Church.