**Meryl MEDER, Plaintiff,**

v.

**CITY OF OKLAHOMA CITY, et al., Defendant.**

**No. CIV–85–2512–P.**

United States District Court,
W.D. Oklahoma.

Sept. 10, 1987.

Steven M. Angel, Oklahoma City, Okl., for plaintiff.

Wiley L. Williams, Asst. Mun. Counselor, Oklahoma City, Okl., for City of Oklahoma City.

Jonathan D. Woods, Asst. Mun. Counselor, Oklahoma City, Okl., for individual defendants.

## MEMORANDUM OPINION AND ORDER

PHILLIPS, District Judge.

### I. BACKGROUND

Before the Court for consideration are cross-motions for summary judgment. Plaintiff, a former Oklahoma City police officer, brought this action on October 11, 1985, seeking redress from alleged deprivation of property and liberty interests arising from his termination from employment on October 13, 1983, for conduct which violated the police code of ethics.

The facts presented to the Court upon a Motion for Summary Judgment must be construed in a light most favorable to the nonmoving party. *Board of Education v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. The Court is precluded from granting summary judgment where there is a genuine dispute as to fact which is material, that is a fact which is relevant under the applica-

ble substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* Finally, the movant must show entitlement to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The relevant facts to this matter are fairly straightforward and are set forth below.

In the fall of 1983 a service station attendant, Mr. Jantz, spoke with plaintiff about whether something could be done to get Mr. Jantz' traffic tickets dismissed. *Interview between plaintiff and Lt. Carl Smith, October 7, 1983, at 3 (hereafter "Interview"). Deposition of plaintiff, August 26, 1986, at 15 (hereafter "Deposition").* The two or three tickets had been issued by the Oklahoma Highway Patrol. Plaintiff told Mr. Jantz he didn't know, but would "see if there was a possibility that they could be dismissed or reduced or whatever." *Interview at 3.* Mr. Jantz told plaintiff that he would put a set of tires on plaintiff's car if plaintiff could help him. *Interview at 3.* Plaintiff thereafter contacted a Highway Patrol Trooper, Lt. Smith, on Mr. Jantz' behalf, to see if "anything can be done." *Deposition at 16.* Approximately four or five weeks later, plaintiff accepted four new tires from Mr. Jantz, which Mr. Jantz installed on plaintiff's personal vehicle. *Deposition at 20.*

On October 6, 1983, Major Chambliss of the Oklahoma City Police Department requested plaintiff to report to his office. When plaintiff arrived, it was revealed to plaintiff that a complaint against him had been received regarding the events described above, and plaintiff was asked to "explain the circumstances." *Deposition at 23.* Plaintiff was then advised that he had the "option of resigning or going before a review board." *Deposition at 25.*

On October 7, 1983, in a recorded interview with plaintiff, Lt. Carl Smith informed plaintiff that his admitted conduct was possibly a criminal violation and was a violation of the police code of ethics. *Interview at 3.*

On October 10, 1983, plaintiff received a letter from R.V. Wilder, Assistant Chief of Police, informing plaintiff that he was expected to be present at a Disciplinary Review Board ("DRB") hearing on October 13, relating to a departmental investigation and complaint lodged against him relating to a violation of the police code of ethics and possible criminal conduct.

On October 13, 1983, the DRB convened and sustained the charge that plaintiff violated the police code of ethics. The DRB recommended that plaintiff be terminated. Later that day, Lloyd Gramling, Chief of Police, terminated plaintiff's employment with approval of the City Manager.

On October 14, 1983, two newspaper articles were published locally, stating " ... Meryl Meder ... was dismissed for violation of police ethics after a morning meeting of the department's disciplinary review board.... The firing stemmed from an incident in early September when Meder *allegedly* agreed to dismiss 'two or three' traffic tickets received by a service station employee in exchange for a new set of tires, spokesman Dave McBride said." *Daily Oklahoman*, October 14, 1983; *Oklahoma Times*, October 14, 1983 (emphasis added). Related articles were published October 25, October 26 and October 30, 1983, but did not refer to police spokesman Dave McBride.

## II. PROPERTY INTEREST

▉ Plaintiff contends he had a property interest in his continued employment as a police officer, based on "mutually explicit understandings embodied in state law, city policies, police department policies, and the collective bargaining agreement." Plaintiff's Brief at page 10. Similar, if not identical, contentions have been addressed and rejected at least twice in this district. *Graham v. City of Oklahoma City*, No. CIV-84-1756-R (W.D.Okla. February 3, 1986) (order granting summary judgment); *Swinney v. City of Oklahoma City*, No. CIV-84439-W (W.D.Okla. May 21, 1984) [Available on WESTLAW, DCT database] (order granting summary judgment).

Therefore, in accordance with *Graham* and *Swinney,* and based upon the uncontroverted facts, this Court finds the plaintiff did not have a protectable property interest in his continued employment.

### III.   LIBERTY INTEREST

Plaintiff also contends he had a "liberty interest which was implicated by the nature and manner of his discharge."
*Plaintiff's Brief at 6.*

The courts have placed several limitations upon a public employee's right to allege a deprivation of liberty. For an employee to make a successful liberty deprivation claim, "she must show that her dismissal resulted in *publication* of information which was *false* and *stigmatizing* —information which had the general effect of curtailing her future freedom of choice or action." *Asbill v. Housing Authority of the Choctaw Nation of Oklahoma,* 726 F.2d 1499, 1503 (10th Cir.1984) (footnotes omitted).

■ Moreover, when an employee does not challenge the substantial truth of the charges against him, no hearing is necessary. "Where the constitutional interest affected is liberty rather than property, the purpose of a due process hearing is solely to refute the charges and clear his name, not to recapture the previous employment." *Williams v. West Jordan City,* 714 F.2d 1017, 1021 (10th Cir.1983) (citations omitted). "But if the employee does not challenge the substantial truth of the charges, no hearing is necessary." *Id.* (citing *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977)).

■ In the instant case, the information that was disseminated by police spokesman Dave McBride was not false. The plaintiff was dismissed for violation of police code of ethics. Plaintiff admitted he spoke with Mr. Jantz about "fixing" his tickets, he admitted making at least one phone call in that regard, and he admitted accepting four new tires from Mr. Jantz a few weeks later. Whether Dave McBride was correctly or incorrectly quoted, a more precise statement of the facts would have led to the same conclusion. Whether plaintiff was actually successful in getting Mr. Jantz' tickets dismissed is not determinative.

Nor is there any evidence that the information that was disseminated curtailed plaintiff's opportunity for future employment. To the contrary, plaintiff was thereafter employed as a letter carrier for the United States Postal Service at an income greater than he was making as a police officer for the City of Oklahoma City.

Finally, assuming *arguendo* there was a liberty interest at stake, plaintiff's admissions of all the material facts preclude the necessity of a hearing to refute the charges and clear his name. *Williams, supra.* In addition to plaintiff's admissions of the material facts set forth above, plaintiff admitted that his conduct was "wrong-doing". *Deposition at 104.* He also admitted that he should be punished for his conduct, but felt the punishment given him was too harsh. *Id.* He further compounded his problems, in the Court's view, when he attempted to explain his acceptance of the tires by distinguishing between receiving gifts and receiving gratuities. "A gift, in my opinion, is where you have a personal relationship like at Christmas, they give you a gift. They don't necessarily expect anything in return for giving you that gift." *Deposition at 114.* "In my opinion, a gratuity is they ask you if you can do this for me, I'll give you this, or they're trying to say you come back to my establishment all the time and I'll give you something so I can utilize your official capacity." *Id.*

Whether the acceptance of the tires by Officer Meder was a "gratuity' or "gift" from Mr. Jantz is not a material distinction under the circumstances of this case. The fact remains that Meder accepted this gratuity following his efforts to assist Jantz in Jantz' traffic ticket quandary, unquestionably giving rise to an appearance of impropriety (if not an outright bribe) and clearly constituting a violation of the police code of ethics. Since plaintiff did not challenge the substantial truth of the charge against him, but rather admitted the essential un-

derlying facts which gave rise to the dismissal, no hearing was necessary.

## IV. PRE–TERMINATION PROCEDURES

 Assuming *arguendo* that plaintiff was entitled to pretermination due process procedures, the record is clear that the pre-termination procedures used to terminate plaintiff did not deprive him of due process as required by the Constitution.

A pre-termination hearing, "though necessary, need not be elaborate" and something less than a full evidentiary hearing can be sufficient prior to adverse disciplinary actions, depending on the nature of subsequent available proceedings. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).[1] The employee need only be given notice, either oral or written, and an opportunity to present reasons, either in writing or in person, why the proposed action should not be taken. *Id.* at 546, 105 S.Ct. at 1496. In the instant case plaintiff had notice and opportunity to be heard before an impartial tribunal, the DRB. Plaintiff was given notice orally on October 6, 1983, and was given the opportunity to respond. He was again notified orally on the morning of October 7, 1983, in a recorded interview with Lt. Carl Smith, and was given an opportunity to respond. On October 10, 1983, plaintiff was given written notice of the DRB hearing to be held October 13, 1983. Plaintiff was given the opportunity to respond during the October 13 DRB hearing. And, finally, plaintiff was given the opportunity to respond during his meeting with Lloyd Gramling to discuss the findings of the DRB. As discussed above, plaintiff did not refute the material facts at any of those opportunities, but rather admitted their substance. Thus, he was given appropriate due process.

## V. CONCLUSION

The Court finds that plaintiff did not have a property interest in his continued employment; that because plaintiff admitted the substantial truth of all the material facts, no pre-termination hearing was required to protect his alleged liberty interest; and that assuming *arguendo* plaintiff was entitled to pre-termination due process procedures, the pre-termination procedures used by the defendants were sufficient to accord plaintiff his due process rights under the Constitution.

Therefore, as to the property and liberty claims, defendant City of Oklahoma City's Motion for Summary Judgment is GRANTED; plaintiff's Motion for Summary Judgment is DENIED.[2]

---

1. Plaintiff does not challenge the sufficiency of the post-termination procedures. Plaintiff had the option of appealing his termination either through the F.O.P. contract procedure or through the Personnel Grievance Review Board, and elected to appeal through the F.O.P.

2. The other contentions set out in plaintiff's motion for summary judgment and in defendant city's motion for summary judgment, concerning immunity and punitive damages respectively, are mooted by the Court's determination herein.