**Rufus A. LYMAN, Plaintiff,**

v.

**J. W. SWARTLEY, President of the Idaho State Board of Education, et al., Defendants.**

Civ. No. 4–73–31.

United States District Court, D. Idaho.

Sept. 13, 1974.

Byron J. Johnson, Webb, Johnson, Tway, Redford & Greener, Boise, Idaho, Joseph N. deRaismes, and Daniel P. Sheehan, Mountain States Regional Office, American Civ. Liberties Union, Boulder, Colo., for plaintiff.

Jess B. Hawley, Jr., and Wayne B. Slaughter, Jr., Hawley, Troxwell, Ennis & Hawley, Boise, Idaho, for defendants.

## DECISION

McNICHOLS, Chief Judge.

Rufus A. Lyman, plaintiff, is a tenured faculty member of Idaho State University, a tax supported institution in the State of Idaho. Lyman began his duties at the school in 1948. He has an impressive academic background, being a medical doctor and having an earned doctorate degree in Zoology.

Idaho State University is subject to control by the Idaho State Board of Education, a Board made up of persons appointed for set terms of service by the Governor of the State. Defendants Swartley, Alford, Deaton, Hay, Munson and Thatcher are presently Board members. Defendant Benoit was not officially sworn in as a member of the Board prior to the action of the Board making up the basis of this action. Defendant Davis is president and executive officer of the University and subject to the orders of the Board of Education.

All other named defendants have been heretofore dismissed from the litigation.

From April 3, 1973, through April 5, 1973, the Board was in session at Moscow, Idaho, for the purpose, *inter alia*, of discussing faculty salaries, input of faculty members, and proposed reappointments of faculty members at the institutions of higher learning in the state. On April 5, 1973, the Board directed President Davis to provide an in-depth evaluation of Dr. Lyman. This was a unique directive and set up a procedure without precedent. Only the plaintiff was selected for such evaluation.

Defendant Davis assigned the actual evaluation process to the University Faculty Advisory Committee, chaired by Dr. Kenneth R. Smith. That committee was composed of faculty members elected by faculty vote. Smith called his committee into session and informed them of the evaluation assignment; the committee voted, less than unanimously, to undertake the obligation. An Ad Hoc Subcommittee was appointed to prepare and submit proposed guidelines for the evaluation process. Lyman was invited to express his ideas for incorporation into the guidelines. On April 13, 1973, guidelines were formally adopted by the Faculty Committee.

Plaintiff responded to the proposed evaluation quickly, affirmatively, and aggressively. He talked to Dr. Smith on the telephone on April 16, 1973, and wrote a letter addressed to Smith with copies to the Board, to Davis, to the president of the local chapter of the American Association of University Professors, and of the Idaho State University Faculty and Professional Association. Additional copies of the letter were posted conspicuously on a bulletin board in the Biological Studies Department at the University and placed on a table in the Student Union Building. Since the letter, admitted into evidence as Plaintiff's Exhibit No. 6, was and is the subject of widely divergent interpretations, the same is set forth herein *in haec verba:*

"April 16, 1973

"To: Kenneth Smith, Chairman
Faculty Affairs Committee

"I protest the inquisition without charges proposed by the Faculty Affairs Committee in its meeting of April 13, 1973. This procedure is illegal according to the University's own Faculty Handbook, is without academic precedent on this campus or anywhere else (as far as I know), and furthermore may prove damaging to my personal and professional reputation.

"On April 14, 1973 I called Kenneth Smith, Chairman of the Faculty Affairs Committee at his home. I requested that, along with the requests for information concerning me, that are to be sent out to sundry individuals, a statement be included to the effect that it would be wise for any person supplying derogatory material be prepared to prove his allegations before a court of law. Mr. Smith objected that such notice might prejudice the kind of information that the person might care to present. I found this objection particularly surprising as it suggests that the Faculty Affairs Committee, or at least Mr. Smith, is perfectly willing to collect whatever hearsay, irresponsible accusations, or unfounded rumors that may be available to it. After some conversation Mr. Smith promised that such a warning as I suggested would accompany the requests for information, or that I would be given a list of the persons to be approached so that I might send such a statement to them myself.

"Although I do not at this moment question the good faith and integrity of the Faculty Affairs Committee, I cannot avoid wondering at its naivety. The Administration apparently has no accusations against me that will bear scrutiny and so it directs this faculty group to produce some. Thus the Faculty Affairs Committee becomes not merely an unwilling accomplice, but

the prime instigator of this shameful and illegal undertaking.

"Be assured that I will seek redress at law for any damage to my personal or professional reputation sustained at the hands of any group or individuals whatever.

"The purpose of this letter is to re-iterate the demands that I have made orally to Mr. Smith and also to recommend prudence to the Faculty Affairs Committee, before it implicates itself too deeply in an unworthy enterprise.

"/s/ R. A. Lyman

"R. A. Lyman

"cc: Dr. J. W. Swartley, President, State Board of Education

"President Wm. E. Davis, ISU

"Thomas Edgar, President, ISU Chapter, AAUP

"Dr. W. Wigginton, President ISU Faculty and Professional Association"

As a result of this letter, defendants Davis and Swartley became very concerned. Davis conferred with Dr. Smith and with the University's retained counsel. Swartley conferred with other members of the Board by telephone and personally with the Assistant Attorney General assigned as legal counsel to the Board. Swartley also sought the advice of defendant Benoit, a lawyer, who was soon to join the Board. All agreed that Lyman's action in writing the letter and talking to Smith on the phone had the effect of making a fair and impartial evaluation by the Faculty Committee impossible. It should be noted that the Faculty Committee itself did not agree to this position and did feel at the time, and continue to feel up to the present time, that a fair and impartial evaluation by the Faculty Committee could be accomplished. There was a general consensus among the defendants that plaintiff's act constituted cause for discharge. How to accomplish the discharge of Lyman became the order of the day for the defendants.

Davis, at the request of Swartley, and after consultation with counsel, proposed that a formal charge be made against Lyman and that he be advised that his contract would not be renewed after the current year. The Board, however, by telephone vote, and after consultation with official legal counsel and with the legal advice of Benoit, unanimously determined to discharge the plaintiff, for cause, immediately. Swartley told Davis that the Board was removing the jurisdiction over the matter out of the hands of the University officials and was making it a Board matter. Board counsel and Mr. Benoit advised the Board that the power to summarily discharge Lyman rested in the Board by state statute.

Accordingly, and on April 23, 1973, the Board notified plaintiff that he was discharged because of his letter and telephone calls which had in effect thwarted a direct order of the Board, i. e., the evaluation of Lyman.

Lyman objected to this discharge and on May 12, 1973, appeared, with counsel, before a regular meeting of the Board. Mr. Benoit, speaking for the Board, announced that the Board believed it had authority to discharge Lyman and stated that the phone calls and letter constituted cause for discharge. Counsel for Lyman indicated that no discharge of a tenured teacher was authorized without due process procedures to determine the existence of good cause. The Chairman offered to entertain a motion from any Board member to reconsider the discharge order, but no motion was offered. The meeting thereupon adjourned.

Plaintiff, represented by attorneys of the Civil Liberties Union, commenced this action. Jurisdiction is claimed under the provisions of 42 U.S.C. §§ 1983, 1985(3) and 1986; 28 U.S.C. §§ 1331, 1334, 2201 and 2202. The court has determined that it has jurisdiction of the subject matter and of the parties. A five-day bench trial was conducted, all documentary evidence presented, and the

case is submitted for determination on the merits.

The evidence preponderates for the factual matters heretofore recited.

█ It is clear that the defendants erred in their understanding of the state law concerning termination of tenured teachers, at least as the same must be considered in the light of the constitutional protections provided by the Constitution of the United States. Tenure as a legal right means a reasonable expectation of continued employment so long as that employment is performed properly. This right of public employment is a property right and a teacher may not be deprived of that right without being afforded due process of law. In such case, due process requires, as a minimum: (1) specification of charges of conduct or performance alleged to warrant deprivation of continued employment; (2) an opportunity to respond ·to those charges, and (3) a fair and impartial fact-finding process to determine the validity or nonvalidity of the charges. Here, the Board, without affording plaintiff any opportunity to respond, determined, unilaterally, that cause for discharge existed and purported to terminate the employment. This action deprived plaintiff of a valuable property right without due process of law in violation of the safeguards provided by the United States Constitution.

█ Plaintiff must be reinstated in his employment status. He is entitled to be reimbursed for the salary and other monetary benefits he should have received had he not been wrongfully discharged. Defendants are to be directed to forthwith so reinstate the plaintiff in his employment. Defendants are also to be restrained from any further acts designed to interfere with the plaintiff's right to employment by any means except those in which due process is provided.

█ Plaintiff seeks money damages from the individual defendants. It is clear from the evidence that the defendants were not motivated by bad faith.

They acted upon advice of counsel and believed that the power to summarily discharge the plaintiff was statutorily authorized. Indeed, such statutory authorization appears to exist, but requires correct interpretation. No malice or wrongful purposes are demonstrated in the evidence. Indeed, the Board members were shown to have not had even a personal acquaintance with the plaintiff. The defendants have a qualified immunity for official acts done absent bad faith or other wrongful motive. Plaintiff has failed to prove a right to any monetary damages against any of the defendants personally.

█ Under the unique circumstances of this case, where it appears to the court that both sides looked forward to a test case, no attorneys' fees will be allowed.

This decision will constitute the court's Findings of Fact and Conclusions of Law as permitted by Rule 52, Federal Rules of Civil Procedure. Plaintiff's counsel will serve and file, within twenty (20) days from the date hereof, a proposed form of judgment in accordance with this decision.