Bruce POOLAW, Plaintiff-Appellant,

v.

The CITY OF ANADARKO, OKLAHOMA; the Mayor of Anadarko, Clark McCaskel; the City Manager, Royce Hunter; the Former Acting Chief of Police, J. C. Givens; the Former Acting City Managers, Bob Wilkerson and Ron Madison, Defendants-Appellees.

No. 79-2304.

United States Court of Appeals, Tenth Circuit.

Argued March 19, 1981.

Decided Sept. 25, 1981.

John Constantikes, Oklahoma City, Okl. (Grover Miskovsky, Oklahoma City, Okl., on the brief), of Miskovsky, Sullivan, Miskovsky, Cooke & Gregg, Oklahoma City, Okl., for plaintiff-appellant.

Terry W. Tippens, Oklahoma City, Okl. (Margaret McMorrow-Love, Oklahoma City, Okl., with him on the brief), of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for defendants-appellees.

Before DOYLE, LOGAN, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Bruce Poolaw, an American Indian, sued the City of Anadarko, its City Manager, and various other present or former city officials pursuant to 42 U.S.C. §§ 1981, 1983, and 2000e *et seq.* (Title VII). The trial court dismissed the causes of action alleged under sections 1981 and 1983 for failure to state a claim upon which relief could be granted, and dismissed the Title VII cause of action for failure to file a timely charge. Poolaw appeals and we reverse.

## I.

## BACKGROUND

Upon review of the trial court's order of dismissal, we must assume that the facts alleged in the complaint are true. *Bryan v. Stillwater Board of Realtors,* 578 F.2d 1319, 1321 (10th Cir. 1977); *Dewell v. Lawson,* 489 F.2d 877, 879 (10th Cir. 1974). We may sustain dismissal only if it appears beyond doubt that Poolaw can prove no set of facts entitling him to relief on his claims. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–2, 2 L.Ed.2d 80 (1957); *Bryan,* 578 F.2d at 1321.

In his amended complaint, Poolaw alleges under 42 U.S.C. § 1981 and Title VII that because of his race defendants intentionally deprived him of the same employment rights and benefits accorded to Caucasians. The alleged improper practices include discriminatory job classifications, promotional practices, and rates of pay. Poolaw also

alleges that he was fired without cause and that he was not reinstated by the City after a review board found his discharge to be improper. Poolaw claims this failure to reinstate following the review board's finding was racially discriminatory because a Caucasian police officer was reinstated under similar circumstances.

In his section 1983 cause of action, Poolaw alleges that he was denied both equal protection and due process of law by the official conduct of defendants. In support of his equal protection allegation, Poolaw charges the City with essentially the same discriminatory conduct noted above. His due process claim allegedly arises from his termination and from the City's failure to reinstate him following the finding of the review board.

At the hearing on defendants' motion to dismiss, the trial court orally concluded that Poolaw had no property interest in his employment with the City and that he had therefore failed to state a claim for relief under either section 1981 or 1983. As to the Title VII claim, the trial court held that the 180-day period within which Poolaw was required to file his Title VII claim with the EEOC began to run on the date of his discharge. The court dismissed the Title VII claim because Poolaw failed to file within this period.

## II.

## THE SECTION 1981 CLAIM

The Supreme Court has noted that although section 1981 [1] "on its face relates primarily to racial discrimination in the making and enforcement of contracts," *Johnson v. Railway Express Agency,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975), the statute provides a remedy against employment discrimination on the basis of race. *Id.* at 459–60, 95 S.Ct. at 1719–20. Grounded as it is on the Thir-

---

1. 42 U.S.C. § 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

teenth Amendment, section 1981 protects employees from racial discrimination in both the public and private sectors. *See Garner v. Giarrusso*, 571 F.2d 1330, 1338 (5th Cir. 1978).

■ The dismissal order itself gives no reason why the trial court concluded that Poolaw failed to state a claim under section 1981. However, at the hearing on the issue, the judge stated that he was sustaining defendants' motion to dismiss the section 1981 cause of action because he concluded that Poolaw did not have a property interest in his employment.

Neither the trial court nor the defendants have cited any case holding that a plaintiff who alleges intentional employment discrimination based on race fails to state a claim under section 1981 unless he has a property interest in his job. On the contrary, section 1981 has been held to provide relief for a discriminatory refusal to hire, a situation in which a property interest in any job is clearly absent. *See, e. g., Ramirez v. Sloss*, 615 F.2d 163 (5th Cir. 1980); *Sabol v. Snyder*, 524 F.2d 1009 (10th Cir. 1975); *Faraca v. Clements*, 506 F.2d 956, 958 (5th Cir. 1975). While the existence of a property interest is critical to the issue of whether a plaintiff may invoke constitutional due process guarantees pursuant to 42 U.S.C. § 1983, *see* part II *infra*, it is simply irrelevant to a claim of denial of equal employment because of race under section 1981.

Poolaw has alleged numerous acts of purposeful employment discrimination by defendants on account of his race. Such allegations state a claim for relief pursuant to section 1981. *See, e. g., Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968 (10th Cir. 1979); *Chicano Police Officers Association v. Stover*, 552 F.2d 918 (10th Cir. 1977).

## III.

### THE SECTION 1983 CLAIMS

In his claim for relief under section 1983,[2] Poolaw alleges that defendants denied him both equal protection and due process under color of state law. As with the section 1981 claim, the sole reason appearing anywhere in the record for the dismissal of the section 1983 claim is the trial court's conclusion that Poolaw had no property interest in his employment.

#### A. *Denial of Equal Protection*

■ Section 1983 provides a remedy for state action that purposefully discriminates on the basis of race in violation of the equal protection clause of the Fourteenth Amendment. *See, e. g., Flores v. Pierce*, 617 F.2d 1386, 1388 (9th Cir. 1980). The protection afforded by section 1983 includes relief from discriminatory employment practices of public employers. *See Whiting v. Jackson State University*, 616 F.2d 116, 121–22 (5th Cir. 1980). Thus, the constitutional right to equal protection with regard to public employment does not depend on the existence of a property interest in that employment.

■ A claim made under section 1983 that the state has impermissibly discriminated on the basis of race and thereby denied a plaintiff equal protection is not to be confused with a claim that the state has deprived a plaintiff of a liberty or property interest without due process of law. *See id.; Harris v. Harvey*, 605 F.2d 330, 338 (7th Cir. 1979). Here Poolaw has asserted that defendants denied him equal protection on the basis of race. The allegations of discriminatory employment practices which are sufficient to support Poolaw's claim for relief under section 1981 are also sufficient to withstand a motion to dismiss his equal protection claim under section 1983. *See Whiting*, 616 F.2d at 121–22.

**2.** 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress."

B. *Denial of Due Process*

We now turn to Poolaw's allegation under section 1983 that defendants deprived him of a property interest without due process of law. As a preliminary matter, we note that the trial judge considered provisions of the Anadarko municipal charter, material outside the pleadings, in assessing defendants' motion to dismiss this claim. Under Fed.R.Civ.P. 12(b), the motion is to be treated as one for summary judgment.

The relevant city charter provisions state that no policeman may be discharged without cause, and that a discharged policeman may appeal his case to a board of review. The charter further provides that the decision of the review board may be appealed to the state district court and thereafter to the state supreme court, and that the decision of the state supreme court shall be final.

In making its determination that the above provisions did not create a property interest in employment, the trial court relied on the consolidated cases of *De Bono v. Vizas* and *Montera v. Vizas*, Nos. 77–1299, 77–1300 (10th Cir. Dec. 18, 1978), and on the case of *Abeyta v. Town of Taos*, 499 F.2d 323 (10th Cir. 1974). However, those cases are factually distinguishable from the instant situation and do not support the decision below.

In *De Bono* and *Montera*, the issue was whether the relevant Colorado statute created a protected property interest in certain city jobs. The statute stated that employees appointed by the city manager could be removed by him for cause, and that the decision of the city manager in such a case would be final. We found it significant that the final decision as to what constituted cause rested with the city manager. Because the statute in essence vested unfettered discretion in the city manager with regard to police employment decisions, we held that no property interest was created.

Here, to the contrary, the final decision as to whether a discharge is supported by cause does not rest with the city official who discharges the employee. The Anadarko municipal charter provides an appeal to the review board and then through the state court system. The charter expressly states that the decision of the state supreme court shall be final. Thus the discretion of the Anadarko city manager is subject to review both by the board and the courts, a circumstance not present in the *De Bono* and *Montera* cases.

In *Abeyta v. Town of Taos*, 499 F.2d 323, there was no statutory limitation on discharge from employment, and no procedure required by which a discharge decision could be reviewed. Upon those facts, we held that under Colorado law the plaintiffs had no protected property interest. *Abeyta* presented this court with a set of circumstances readily distinguishable from the case now before us.

We must look to the state law of Oklahoma in assessing whether the Anadarko ordinances create a property interest in employment. *See Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The touchstone in our analysis is whether Poolaw has a "legitimate claim of entitlement" to his position. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Oklahoma Supreme Court has recognized that "the terms of employment established by an employer . . . may create a sufficient expectancy of continued employment to constitute a property interest, which must be afforded constitutionally guaranteed due process." *Hall v. O'Keefe*, 617 P.2d 196, 200 (Okla.1980).

Here the city charter specifically states that a policeman may not be discharged without cause. The charter further provides that the determination of cause is not a matter solely within the discretion of the employer. If review of termination is sought, the administrative and judicial procedures established provide an independent, objective and final decision on the issue of cause. These procedures are clearly sufficient to give Poolaw a legitimate expectation that his employment will continue absent cause for discharge.

In so concluding, we have considered the decision in *Umholtz v. City of Tulsa*, 565

P.2d 15 (Okla.1977), cited by the court in *Hall v. O'Keefe*, 617 P.2d at 200. In *Umholtz*, the relevant city charter provided that city employees could only be discharged for cause. The court stated that "[t]his language taken alone would clearly confer a property right in continued employment." 565 P.2d at 23. The charter also provided only for post-termination administrative review by the city commission. Based on its reading of *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the court concluded that the charter created a property right *"defined* and *limited by* the procedural language of the provision," 565 P.2d at 24 (emphasis in original), and that as a matter of law such a limited property right was not sufficient to invoke the due process clause of the Fourteenth Amendment. The decision in *Arnett,* however, does not support this latter conclusion. The Court in *Arnett* determined that such a property interest *is* subject to the due process guarantees of the Fourteenth Amendment. As the Court subsequently made clear in *Bishop v. Wood,* 426 U.S. 341, 345 n.8, 96 S.Ct. 2074, 2077 n.8, 48 L.Ed.2d 684 (1976), the *Arnett* Court concluded "that because the employee could only be discharged for cause, he had a property interest which was entitled to constitutional protection."

Moreover, the statutory provisions in *Umholtz* relevant to the creation of an expectation of continued employment were not as broad as those in the instant case. The Anadarko city charter provides for both administrative *and* judicial review of a finding of cause for termination. Under these circumstances, we believe the Oklahoma Supreme Court would find a property interest in continued employment protected by the Fourteenth Amendment. *See Perry v. Sindermann,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972).

We express no opinion on whether the post-termination procedures provided in the Arnadarko city charter satisfy the due process requirements of the Fourteenth Amendment, nor whether it was a violation of Poolaw's due process rights to refuse to reinstate him after the administrative review board held that he was terminated without cause. The decision as to what process is due and whether it was provided is best left in the first instance to the trial court after full development of the relevant facts.

## IV.

### THE TITLE VII CLAIM

Poolaw was fired from his job as a patrolman in January 1978. He appealed his discharge to the Policeman's Board of Review, which found in his favor on August 8, 1978. Following that decision, defendants refused to reinstate Poolaw. He filed an employment discrimination charge with the EEOC on November 20, 1978.

An EEOC complaint must be filed "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). Poolaw's EEOC charge was not filed within 180 days of his discharge in January 1978. However, it was filed within 180 days of defendants' refusal to reinstate him after the favorable decision of the review board.

The trial court held that Poolaw's charge was not timely filed because the 180-day period began to run upon the date of his discharge, basing its decision upon *Electrical, Radio & Machine Workers Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). In *Electrical Workers,* petitioner filed a grievance pursuant to a collective bargaining agreement between her union and her employer after she was terminated. The grievance proceedings were resolved against her, and she filed a charge with the EEOC. After receiving a "right to sue" letter, she filed suit under Title VII alleging that the company had discharged her because of her race. Her EEOC filing would have been timely if the statutory period began to run on the day the grievance procedures were terminated, but untimely if the period began on the day of discharge. The Supreme Court held that the period commenced on the day of discharge and that it was not tolled during the pendency of the grievance proceeding.

■■ In determining whether an EEOC complaint is timely filed, the unlawful employment practice complained of must be precisely identified. *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431, 439 (1980). In *Electrical Workers*, the petitioner did not allege in her Title VII suit that the grievance proceedings themselves constituted acts of unlawful discrimination. Here, however, Poolaw alleges "[t]hat irrespective of the ruling by the Board on August 8, 1978, the Defendants ... refused to reinstate the Plaintiff. However, a caucasian employee was reinstated by said Department, after his favorable decision on that same day." Rec., vol. I, at 49. Poolaw's allegation that his post-termination treatment was discriminatory is a claim separate and distinct from his allegation of discriminatory discharge. The 180-day period within which he was required to file his reinstatement claim began to run at the time that alleged violation actually occurred. *See Delaware State College*, 449 U.S. at 259, 101 S.Ct. at 504–5, 66 L.Ed.2d at 439–40; *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558–59, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). That period necessarily could not commence before the decision of the review board on August 8, 1978. Poolaw's EEOC charge was filed on November 20, 1978. Accordingly, we hold that his claim of discriminatory refusal to reinstate was timely filed. The order dismissing that portion of his Title VII claim is reversed.

This case is reversed and remanded for further proceedings consistent with this opinion.