728 F.2d 428
 115 L.R.R.M. (BNA) 3563, 105 Lab.Cas. P 55,603
 Edaleen VINYARD, Appellant,
v.
Robert J. KING, in his individual capacity and as
Administrator of the Clinton Regional Hospital, EPH Monroe,
Charles E. Engleman, Bud Miskel, Romney M. Chaffin, David
Stratton, individually and in their official capacities as
members of the Board of Directors of the Clinton Regional
Hospital, State of Oklahoma, their servants, agents,
representatives, assigns and successors, Appellees.
 No. 82-1521.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 16, 1984.
 
 Mary Helm, Enid, Okl. (James Craig Dodd and Stephen Jones, Enid, Okl., with her on briefs), for appellant.
 H. Leonard Court, Oklahoma City, Okl. (Gary L. Betow, Oklahoma City, Okl., with him on brief), of Crowe & Dunlevy, Oklahoma City, Okl., for appellees.
 Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 We are asked to decide whether the district court properly granted summary judgment on the issue of whether plaintiff, Edaleen Vinyard, had a property interest in her continued employment with a municipal hospital.
 
 I. Background
 
 2
 Mrs. Vinyard was hired as the hospital's Director of Volunteer Services in 1972. She served in that capacity until 1978, when Robert J. King, the hospital's administrator, fired her for allegedly violating his policy concerning the confidentiality of personnel communications. Mrs. Vinyard has consistently denied that allegation. Both parties stipulate, however, that plaintiff was given no hearing prior to being fired. Record, vol. 2, at 201. At the time she was hired, there was no formal employees' manual in effect. However, in 1976, Mrs. Vinyard was given a copy of the hospital's Employee Handbook ("handbook") which provided information concerning the policies and benefits applicable to hospital employees. Record, vol. 2, at 282.
 
 
 3
 Mrs. Vinyard filed this suit under 42 U.S.C. Sec. 1983[1] against Mr. King and the members of the hospital's board of directors, in their official and individual capacities. She sought, inter alia, reinstatement, compensatory damages, punitive damages against Mr. King, costs and attorney's fees. She alleged that her termination was state action depriving her of a property interest in her continued employment without due process of the law, in violation of the fourteenth amendment.[2] U.S. Const. amend. XIV, Sec. 1. The district court in Vinyard I invoked the Pullman[3] abstention doctrine. We reversed[4] and remanded for the district court to decide whether the facts surrounding Mrs. Vinyard's employment gave rise to a property interest under Oklahoma law.[5] On remand, defendant filed a motion for summary judgment. Mrs. Vinyard appeals the district court's grant of defendants' motion for summary judgment, holding that under Oklahoma law, she does not have a property interest in her continued employment. She claims that there are genuine issues of material fact surrounding her employment contract with the hospital, precluding an award of summary judgment. Fed.R.Civ.P. 56(c).
 
 
 4
 As we must do, we have considered all factual inferences in the light most favorable to the existence of issues of material fact, and in the light most favorable to the plaintiff, Mrs. Vinyard--the party opposing the summary judgment motion. Exnicious v. United States, 563 F.2d 418, 423 (10th Cir.1977). We reverse the decision of the district court on the ground that as a matter of Oklahoma law, Mrs. Vinyard has a constitutionally protected property interest in her employment with the hospital. We remand for the district court to determine the appropriate award of damages, costs and attorney's fees.
 
 II. Section 1983 Claim
 
 5
 When bringing a section 1983 action, a public employee must show that she possesses a property or liberty interest in her employment in order to trigger the due process protections afforded by the fourteenth amendment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In the case before us, Mrs. Vinyard advances two theories in an attempt to support the sufficiency of her property interest claim. First, despite the fact that she had no written employment contract, Mrs. Vinyard alleges that there were special circumstances and considerations giving rise to an implied employment contract with the hospital. Mutually explicit understandings can create a property interest in continued employment by means of an implied contract. Bishop v. Wood, 426 U.S. 341, 344 & n. 6, 96 S.Ct. 2074, 2077 & n. 6, 48 L.Ed.2d 684 (1975) (citing with approval Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972)). If we thought that plaintiff's property interest existed by means of an implied annual contract with her employer, we would remand for a factual determination of whether the facts and special circumstances alleged by plaintiff do indeed give rise to such a contract.[6] However, the existence and sufficiency of Mrs. Vinyard's property interest is governed by the terms set forth in the hospital's handbook.
 
 
 6
 Mrs. Vinyard's second theory is that a property interest in her continued employment was created when the hospital issued its employee handbook in 1976.[7] Record, vol. 2, at 211-82. She argues that the handbook creates a property interest because it provides that permanent employees, such as herself, could only be discharged for cause.[8] See Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).
 
 
 7
 Defendants would like us to believe, however, that the hospital was not restricted to dismissing its employees solely for cause. They argue that classification as a "permanent" employee does not give rise to a contract other than one for an indefinite period of time--terminable at will. The district court, citing to Edwards v. Kentucky Utilities Co., 286 Ky. 341, 150 S.W.2d 916 (1941), and Garza v. United Child Care, Inc., 88 N.M. 30, 536 P.2d 1086 (App.1975), cases cited by the Oklahoma Supreme Court in Singh v. Cities Service Oil Co.,[9] 554 P.2d 1367, 1369 n. 3 (Okl.1976), concluded that under Oklahoma law the parties' employment relationship was terminable-at-will and that the handbook did not restrict the hospital to discharge its permanent employees only for cause. Vinyard v. King, No. C-79-185-W, slip op. at 4-5 (W.D.Okla. January 27, 1982). We disagree.
 
 
 8
 Both the district court's decision and defendants' argument place unnecessary reliance on the significance of whether Mrs. Vinyard had an at-will or definite duration employment contract. They ignore the importance of the employee handbook[10]--the pivotal point in Mrs. Vinyard's section 1983 claim--which is determinative of a property interest under Oklahoma law. See Langdon v. Saga Corp., 569 P.2d 524, 526-28 (Okl.Ct.App.1976). Whether Mrs. Vinyard has a property interest under Oklahoma law sufficient to trigger the protections of the fourteenth amendment is not necessarily determined by what type of contract she was employed under. Rather her property interest is determined by whether the terms of employment created by contract, federal statute,[11] city charter,[12] or an employee manual[13] "create a sufficient expectancy of continued employment to constitute a property interest, which must be afforded constitutionally guaranteed due process." Hall v. O'Keefe, 617 P.2d 196, 200 (Okl.1980). Therefore, we turn to Oklahoma law, Bishop, 426 U.S. at 344, 96 S.Ct. at 2077, to determine whether Mrs. Vinyard had a "legitimate claim of entitlement" to her job rather than a mere "unilateral expectation" of continuing in her position. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
 
 III. Existence of Property Interest
 
 9
 In Oklahoma the provisions of an employee handbook can constitute a contract between the employer and employee and define the employer-employee relationship for as long as those provisions are in effect and the employee provides consideration for the benefits provided by the handbook. The consideration can be quite small and can even consist of the employee continuing to work and foregoing the option of quitting. Langdon v. Saga Corp., 569 P.2d 524, 526-28 (Okl.App.1976). In Langdon, the employee handbook provided for severance and vacation pay upon termination. In holding that those provisions constituted part of the employment contract, the court held that "the [p]ersonnel [m]anual ... became a ... contract which defined the employer-employee relationship during the period the policy was in effect and the employee performed." Langdon, 569 P.2d at 528. See also Smith v. Kerrville Bus Co., 709 F.2d 914, 919-20 (5th Cir.1983) (reasons for discharge enumerated in employee handbook restricted employer to discharge only for cause). The Oklahoma Supreme Court has since recognized that "the terms of employment established with an employer ... may create a sufficient expectancy of continued employment to constitute a property interest, which must be afforded constitutionally guaranteed due process." Hall v. O'Keefe, 617 P.2d 196, 200 (Okl.1980).
 
 
 10
 Here both parties stipulate that there is no written employment contract. The only writing evidencing an agreement is the employee handbook, signed by both Mrs. Vinyard and the hospital's personnel assistant. The handbook was designed "to acquaint [the employee] with the policies and benefits which apply to ... employee[s]". Record, vol. 2, at 211. It specifically states that a permanent employee may not be discharged without cause.[14] The fact that the handbook does not provide for review procedures[15] is no bar to our holding that under these circumstances we believe the Oklahoma Supreme Court would find a property interest in continued employment protected by the fourteenth amendment. See Perry v. Sindermann, 408 U.S. 593, 601-03, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972); Poolaw v. City of Anadarko, 660 F.2d 459 (10th Cir.1981). As a public employee, Mrs. Vinyard retained the right, regardless of its omission from the handbook, to seek review of the hospital's policies and to seek redress for the violation of her constitutional rights.
 
 
 11
 We hold that termination by the hospital, without a hearing to determine whether cause existed, was a violation of section 1983. Since it is not disputed that no procedural process was provided in this case, we do not need to discuss the question of what processes would satisfy procedural due process in a case like this. We reverse the decision of the district court and hold, as a matter of law, Mrs. Vinyard had a property interest in her continued employment with the hospital. We remand for a determination of damages.
 
 IV. Damages, Costs and Attorney's Fees
 A. Damages
 
 12
 Having held that the hospital's termination of Mrs. Vinyard, without a hearing, was in violation of her fourteenth amendment rights, we turn next to the question of damages against the hospital for a section 1983 violation. In her complaint Mrs. Vinyard requested compensatory damages in addition to reinstatement. She also seeks punitive damages in the amount of $75,000 against the defendant, Mr. King.
 
 
 13
 Local governing bodies are liable for constitutional deprivations when the improper action stems from "decision[s] officially adopted and promulgated by that body's officers." Monell v. Department of Social Services of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978); Miller v. City of Mission, 705 F.2d 368 (10th Cir.1983). As a municipal hospital, the hospital is liable under section 1983 if it "was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm." McClelland v. Facteau, 610 F.2d 693, 697 (10th Cir.1979). Personal participation is not the only predicate for liability under section 1983. Anyone who under color of state law, subjects, or causes to be subjected, any citizen to a constitutional deprivation will be liable.
 
 
 14
 Here the hospital is liable for its failure to provide a pretermination hearing to determine if cause was present before Mrs. Vinyard's discharge. Since this case is before us after a grant of summary judgment, we remand to the district court to compute compensatory damages and to consider her request for reinstatement. See Keyer v. Civil Service Commission of New York, 397 F.Supp. 1362, 1370 (E.D.N.Y.1975); Vega v. Civil Service Commission of New York, 385 F.Supp. 1376 (S.D.N.Y.1974); Lyman v. Swartley, 385 F.Supp. 661 (D.Idaho 1974).
 
 B. Punitive Damages
 
 15
 Mrs. Vinyard seeks punitive damages in the amount of $75,000.00 against defendant Mr. King for knowingly, willfully and wantonly discharging her from her employment and requests a jury trial on this issue.
 
 
 16
 Punitive damages may be awarded in a section 1983 action to deter or punish violations of constitutional rights. Miller v. City of Mission, 705 F.2d 368 (10th Cir.1983). Although punitive damages will not lie against a municipal organization itself, McKee v. Heggy, 703 F.2d 479 (10th Cir.1983), they will lie against a municipal official, based on his personal financial resources, if such official conduct was prompted by an "evil motive or intent, or when it [the conduct] involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, --- U.S. ----, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).
 
 
 17
 We remand for a determination of whether Mr. King's actions rose to the required level.
 
 C. Costs and Attorney's Fees
 
 18
 The Civil Rights Attorney's Fees Awards Act of 1976[16] provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs," 42 U.S.C. Sec. 1988 (Supp. V 1981), and as such applies to an action brought pursuant to section 1983. As a "prevailing party", Mrs. Vinyard will be entitled to recover under section 1988. On remand we direct the district court to Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (prevailing party's section 1988 fee award must be calculated in relation to the degree of success obtained) for an appropriate determination of attorney's fees, including attorney's fees for the successful prosecution of this appeal.
 
 
 
 [1]
 Section 1983 provides in part as follows:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 42 U.S.C. Sec. 1983 (Supp. V 1981). Local governing bodies such as municipalities, can be sued directly under Sec. 1983 when the alleged unconstitutional action reflects officially adopted policies. Monell v. Dep't of Social Servs. of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d 611 (1978). Mr. King and the board of directors of the hospital, which is owned and operated by the municipality of Clinton, Oklahoma, are local government officials who, when sued in their official capacities, are "persons" for purposes of Sec. 1983. Id. at 690 n. 55, 98 S.Ct. at 2035 n. 55.
 
 
 [2]
 Mrs. Vinyard initially sought recovery for the deprivation of a liberty interest as well. However, once the district court granted defendants' motion for summary judgment on the property interest issue, Mrs. Vinyard moved to dismiss with prejudice the remaining issues concerning her liberty interest. Record, vol. 2, at 394
 
 
 [3]
 Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); see generally, C. Wright, Law of Federal Courts 218-36 (3rd ed. 1976); Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 L. & Contemp.Prob. 216, 230 (1948)
 
 
 [4]
 Vinyard v. King, 655 F.2d 1016 (10th Cir.1981)
 
 
 [5]
 The hearing requirement necessary to satisfy procedural due process of the fourteenth amendment is triggered once there is a showing that a "property" or "liberty" interest exists. See Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Property and liberty interests are not limited by rigid or technical definitional forms, but rather are defined by reference to state law. Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)
 
 
 [6]
 Oklahoma law provides that absent
 facts and circumstances which indicate that an agreement is for a specific sum, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at will by either party.
 Singh v. Cities Serv. Oil Co., 554 P.2d 1367 (Okl.1976). Mrs. Vinyard alleges that special circumstances existed by virtue of the fact that she gave additional and special consideration to the hospital when she was hired. Her deposition contains testimony to the effect that she agreed to the full-time position after explaining her reluctance to do so because she was caring for her sick mother at the time. Record, vol. 3, at 20-21. Mrs. Vinyard's allegation of special circumstances, which is disputed by defendants, would create a genuine issue of material fact sufficient to allow a jury to find, under Singh, that she had a property interest in her continued employment with the hospital. But, we need not reach this issue since we find that the existence and sufficiency of Mrs. Vinyard's property interest is governed by the existence and terms of the hospital's employee handbook.
 
 
 [7]
 In addition to giving each of its employees a copy of the handbook, each employee was required, after reading and understanding its contents, to sign, along with the personnel assistant, the back page of the handbook. Record, vol. 2, at 282
 
 
 [8]
 The handbook defines discharge as "the immediate termination of an employee's services for any of the following specific causes ...." The handbook then lists twenty specific causes. Record, vol. 2, at 243-44. Despite the fact that the list is nonexclusive, it is clear that an employee may only be discharged for cause
 
 
 [9]
 Defendants cite Singh to support their allegation that Mrs. Vinyard was employed under a terminable-at-will contract, rather than an implied annual contract. The Singh case arose pursuant to the Uniform Certification of Questions of Law Act, Okla.Stat. tit. 20, Secs. 1601 to 1602 (1962 and Supp.1983). The Oklahoma Supreme Court rendered its decision after being presented with a specific factual situation by the United States District Court for the Northern District of Texas. Singh dealt solely with the issue of whether a particular fact situation gave rise to an at-will or specific term agreement between an employer and employee and not with the construction of the terms of that agreement nor whether such terms gave rise to a property interest under Oklahoma law. See Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Therefore, reliance upon Singh in order to determine whether a property interest exists under Oklahoma law for the purpose of a section 1983 cause of action is misplaced
 
 
 [10]
 This circuit, in Williams v. West Jordan City, 714 F.2d 1017, 1019-20 (10th Cir.1983), affirmed a district court's finding that an employee's manual did not confer a property interest under Utah law. There is nothing here inconsistent with our decision in Williams. Rather, as the Supreme Court noted in Bishop, supra, property interests, for purposes of the fourteenth amendment, are defined by reference to state law
 
 
 [11]
 Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)
 
 
 [12]
 Poolaw v. City of Anadarko, 660 F.2d 459 (10th Cir.1981)
 
 
 [13]
 Langdon v. Saga Corp., 569 P.2d 524 (Okl.Ct.App.1976). See also Smith v. Kerrville Bus Co., 709 F.2d 914 (5th Cir.1983)
 
 
 [14]
 See supra note 8 and accompanying text
 
 
 [15]
 Procedural protections, such as review procedures, standing by themselves have not been held sufficient to create property interests in continued employment. They can, however, sustain an entitlement to the procedural protections themselves. See, e.g., Asbill v. Housing Auth., 726 F.2d 1499, 1501-02 (10th Cir.1984)
 
 
 [16]
 Pub.L. No. 94-559, 90 Stat. 2641 (amending 42 U.S.C. Sec. 1988 (1866))