922 F.2d 1506
 6 Indiv.Empl.Rts.Cas. 179
 Jean CARNES, Plaintiff-Appellee,
v.
Ron PARKER, in his individual capacity, as Administrator of
Choctaw Memorial Hospital, and as an agent and employee of
Baptist Health Care Corporation; Baptist Health Care
Corporation; Clay Pinson; and Walter Hufnagle, Defendants-Appellants,
and
A.L. Fountain; Alvin King; Noel Pence; Howard Turner,
individually and in their official capacity as members of
the Board of Trustees of the Choctaw County-City of Hugo
Hospital Authority, their servants, agents, representatives,
successors and assigns, Defendants.
 No. 89-7075.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 14, 1991.
 
 Frank H. McCarthy (Mike Barkley, with him on the briefs), Barkley, Rodolf, Silva, McCarthy & Rodolf, Tulsa, Okl., for defendants-appellants.
 David L. Graven, Russell & Payne, Oklahoma City, Okl., for plaintiff-appellee.
 Before MOORE, TACHA and BRORBY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Defendants-appellants Ron Parker, Baptist Health Care Corporation (Baptist Health), Clay Pinson, and Walter Hufnagle appeal a jury verdict in favor of plaintiff-appellee Jean Carnes in an action she brought under 42 U.S.C. Sec. 1983. On appeal, the defendants argue the district court erred by: (1) overruling the defendants' motion for a directed verdict because Carnes does not have a property right in her continued employment under Oklahoma law, (2) overruling defendants Hufnagle and Pinson's motion for a directed verdict because there is no evidence of their involvement in the decision to terminate Carnes, and (3) refusing to instruct the jury not to award compensatory damages if Carnes would have been discharged had an adequate termination hearing been provided. The defendants also move to certify to the Oklahoma Supreme Court the question whether Oklahoma law recognizes a property interest in continued employment under the facts of this case. We exercise jurisdiction under 28 U.S.C. Sec. 1291, reverse the district court's denial of the defendants' motion for a directed verdict, and remand with instructions to the district court to enter a judgment consistent with this opinion. We dismiss as moot the motion for certification.
 
 
 2
 The Choctaw Memorial Hospital (Hospital) is a public county hospital. All Hospital employees are considered employees of Baptist Health. Baptist Health contracted with the Choctaw County/City of Hugo Hospital Authority (City/County Authority), a public trust established under Oklahoma law, to provide the Hospital with hospital management services. Carnes was employed as a "permanent" radiology technician by Baptist Health at the Hospital.
 
 
 3
 On March 11, 1986, Carnes had an argument with Marcia Rosenthal. Rosenthal was Carnes' immediate supervisor and director of the radiology department at the Hospital. Following the argument, Carnes left work despite Rosenthal's request for her to stay.
 
 
 4
 That evening Rosenthal contacted Carnes and suggested they meet to settle the dispute. Carnes refused to speak with her. The next day Carnes did not show up for two scheduled procedures in her department. She met with the administrator of the Hospital, Ron Parker, who is also Rosenthal's supervisor. Parker promised to try to settle the dispute. He discussed the conflict with Rosenthal. Rosenthal told Parker she did not feel comfortable working with Carnes and no longer trusted her to fulfill her job responsibilities. Based on this discussion, Parker terminated Carnes for insubordination and failure to appear for work on March 12 as her work schedule required.
 
 
 5
 After her termination, Carnes wrote a letter to the board of trustees and met with two board members, Walter Hufnagle and Clay Pinson. She later met with the entire board. Following the board meeting, Carnes discussed her dismissal with Parker and Rosenthal together. Rosenthal explained to Carnes she did not feel comfortable working with her and suggested Carnes take another position in the radiology department. Carnes refused.
 
 
 6
 Grievance and discipline procedures are governed by the personnel manual the Hospital provides its employees. According to this manual, insubordination is cause for immediate discharge. The manual further states that "[r]efusal to complete assigned schedule or walking off the job without approval of [an] immediate supervisor" may be punished by immediate discharge without warning after the first offense. An employee may also be discharged immediately for refusing to obey the orders of supervisory personnel, deliberately destroying or damaging hospital property, willfully falsifying an application for employment or other information requested by the hospital, and failing to report to work for two successive scheduled days without the approval of an immediate supervisor. The manual notes "[t]he Administration, Department Heads and supervisors may carry out disciplinary action towards an employee for just cause."
 
 
 7
 The Hospital's personnel manual also establishes a formal, post-termination grievance procedure that allows an employee to investigate and contest any problem or grievance. The manual describes the purpose of the grievance procedure as follows:
 
 FAIR TREATMENT POLICY:
 
 8
 The intent of the Fair Treatment Policy is to provide a means by which employees may take seemingly unfair work-related problems to the attention of various levels of management needed to resolve such problems.
 
 
 9
 Your supervisor, Department Head, or the Administrator is available to discuss work-related problems with you, including any questions you may have regarding interpretation of hospital policy. Most situations may be clarified by talking with your immediate supervisor. However, in the event you deem it necessary, the following formal procedure is available to you if a problem or grievance arises. There will be no discrimination or reprisal against any employee, past or present, because he or she has utilized the Fair Treatment Policy.
 
 
 10
 The procedure outlined in the manual provides three or four levels of review of an employee grievance, depending on the supervisory hierarchy within a particular department:
 
 I. FIRST STEP: Supervisor
 
 11
 In order to minimize the possibility of misunderstanding, it is necessary to have an informal discussion of your grievance with your immediate supervisor within five working days after its occurence. The supervisor will investigate and evaluate the grievance and advise you of his or her determination within three working days of the initial discussion.
 
 II. SECOND STEP: Department Head
 
 12
 If your grievance is not resolved to your satisfaction by your supervisor, you may appeal the matter in writing to your Department Head within five working days of your supervisor's decision. The Department Head will render a decision within three working days after receiving the appeal stating the pertinent facts revealed by his investigation and the reasons for his conclusion.
 
 III. THIRD STEP: Administration
 
 13
 If your department's chain of command includes the Assistant Administrator, proceed with Step III-A; otherwise, proceed with Step III-B.[1]
 
 
 14
 A. If your grievance is still not resolved to your satisfaction after your Department Head renders his conclusion, the matter may be appealed to the Assistant Administrator within five working days after the Department Head's decision. A meeting will be arranged with you, your supervisor and your Department Head within three days of receipt of the matter to review objectively the circumstances of the grievance. The Assistant Administrator will render a decision in writing within five working days after the meeting stating the pertinent facts revealed by his investigation and the resons [sic] for his conclusion.
 
 
 15
 B. If the grievance is not resolved to your satisfaction by Step III-A, the matter may be appealed in writing to the Administrator within five working days of the Assistant Administrator's decision. The Administrator will cause the matter to be thoroughly investigated by any persons he deems necessary. He will render his decision stating the pertinent facts revealed by his investigation, and the reasons for his conclusion.
 
 
 16
 In addition to this grievance procedure, the manual states "[i]f the employee feels that he is still unfairly treated, he may request a meeting of the Personnel Committee of the Board of Trustees."
 
 
 17
 The defendants contend Baker's termination of Carnes does not constitute state action as required by the Constitution and section 1983. We disagree. In deciding whether conduct of a private entity constitutes state action, we examine the structure of the entity and its relation to the government. Burton v. Wilmington Parking Auth., 365 U.S. 715, 722-23, 81 S.Ct. 856, 860-61, 6 L.Ed.2d 45 (1961). We held in Milo v. Cushing Mun. Hosp., 861 F.2d 1194 (10th Cir.1988), that conduct by a private entity that has contracted with a public trust to provide day-to-day hospital services for a public city hospital constitutes state action. Id. at 1195-97.
 
 
 18
 The relationship between the government and the private actor in the present case is indistinguishable from the relationship between the government and private actor in Milo. Here, Baptist Health--a private entity--has contracted with the County/City Authority--a public trust--to provide hospital management services for the Hospital--a public county hospital. Because the relationship between the government and Baptist Health is virtually identical to that in Milo, we hold the termination of Carnes by Parker in his capacity as a supervisory employee of Baptist Health constitutes state action.
 
 
 19
 Carnes contends the Hospital violated her constitutionally protected property interest in continued employment by terminating her without providing proper procedural safeguards. The procedural safeguards she claims were due and were not provided include: (1) a hearing before an impartial tribunal; (2) a meaningful opportunity to be heard in her own defense, to present evidence, and to confront the witnesses against her; and (3) presence of counsel.
 
 
 20
 Carnes' federal constitutional claim depends on her having a property right in continued employment. Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701, 2708-10, 33 L.Ed.2d 548 (1972). If she in fact has such a right, then the government cannot deprive her of continued employment without procedural due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).
 
 
 21
 Property interests are not created by the due process clause of the Constitution. Roth, 408 U.S. at 577, 92 S.Ct. at 2709. Rather, they are created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract. See, e.g., Bishop v. Wood, 426 U.S. 341, 344-45, 96 S.Ct. 2074, 2077-78, 48 L.Ed.2d 684 (1976) (ordinance or implied contract may create a property interest in continued employment); Perry v. Sindermann, 408 U.S. 593, 600-02, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972) (written contract with explicit tenure provision creates property interest; contract "implied" from policies and practices of institution may create property interest); Melton v. City of Oklahoma, 879 F.2d 706, 718 n. 15 (10th Cir.) (state statute, ordinance, or express or implied contract may create property interest), partial reh'g granted, 888 F.2d 724 (1989); Vinyard v. King, 728 F.2d 428, 432 (10th Cir.1984) (Vinyard II ) (federal statute, city charter, or contract may create a property right); Poolaw v. City of Anadarko, 660 F.2d 459, 463 (10th Cir.1981) (city charter may create property interest), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985).
 
 
 22
 A public employee has a property interest in continued employment if under state law that employee has a "legitimate claim of entitlement" to--not merely a "unilateral expectation" of--continued employment. See Roth, 408 U.S. at 577, 92 S.Ct. at 2709; see also Wood, 426 U.S. at 344-45, 96 S.Ct. at 2077-78. When an employee bases an expectation of continued employment on an employment contract, we rely on state contract law to determine whether there is a legitimate claim to continued employment under that contract. See Vinyard II, 728 F.2d at 432. To ascertain whether Carnes is entitled to procedural due process we must determine whether the Oklahoma Supreme Court would find Carnes could rely on the policies and procedures contained in her employer's personnel manual to create a legitimate claim of entitlement to continued employment.
 
 
 23
 Initially we note Oklahoma recognizes the employment at-will doctrine. In the absence of an implied or express agreement between the employer and its employees, the employer may terminate an employee at any time with or without cause. See Singh v. Cities Serv. Oil Co., 554 P.2d 1367, 1368-69 (Okla.1976). The Oklahoma Supreme Court has refused to recognize an implied covenant of good faith and fair dealing in employment at-will contracts. See Burk v. K-Mart Corp., 770 P.2d 24, 27 (Okla.1989).
 
 
 24
 Decisions by the Oklahoma appellate courts indicate the Oklahoma Supreme Court recognizes that the language of an employer's personnel manual may alter the employment at-will relationship between an employer and its employees. The Oklahoma Supreme Court acknowledged in Hinson v. Cameron, 742 P.2d 549 (Okla.1987), that Oklahoma courts have recognized an employer's personnel manual can create a basis for a terminated employee's action for breach of contract. In the context of discussing the incorporation of an employer's policy statements into its employment contract with its employees, the court approved of Langdon v. Saga Corp., 569 P.2d 524, 527-28 (Okla.App.1976), where the Oklahoma Court of Appeals held a personnel manual was a contract defining the employer-employee relationship during the period the policy was in effect. 742 P.2d at 555. The court in Hinson noted the Langdon decision is consistent with another Oklahoma Supreme Court decision, Miller v. Independent School Dist. No. 56, 609 P.2d 756, 759 (Okla.1980), in which the court held a policy statement of the board of education had become part of a teacher's contract of employment. The Hinson decision, along with the Hinson court's discussion of Langdon and Miller, are clear indications the Oklahoma Supreme Court would recognize that the Hospital's personnel manual altered the employer-employee relationship between the Hospital and Carnes.
 
 
 25
 We also are convinced the Oklahoma Supreme Court would find the Hospital's personnel manual altered the relationship between the Hospital and Carnes only to the extent that policies on which Carnes now relies are expressly stated in the manual. In Hinson, the Oklahoma Supreme Court rejected the plaintiff's wrongful termination claim based on an implied contract theory because the manual said nothing that prevented the employer from terminating her without good cause. 742 P.2d at 555-56. The manual listed some grounds for termination including an unexcused absence from work, refusing to complete an assigned schedule, walking off the job without approval of an immediate supervisor, failing to follow a supervisor's instructions, and failing to follow office policy. Id. at 556 n. 30. However, the court in Hinson refused to conclude the manual's list of reasons for termination indicated by implication the hospital could terminate only for cause. Id. Thus, the court held the employee had no contractual basis to expect to be terminated only for good cause and he could be terminated at will by the hospital. Id. at 556-58.
 
 
 26
 The Oklahoma Court of Appeals' decision in Breshears v. Moore, 792 P.2d 91 (Okla.App.1990), supports our interpretation of Hinson. In Moore, the policy manual promised terminated employees a "termination order" setting forth the reasons for termination and an opportunity for a hearing. Id. at 93-94. The employee in Moore did not insist on any rights beyond those specifically noted in the written policy statement. Instead, she argued her employer did not follow the policy in the manual. Id. at 92. The court agreed with the employee, holding the employer had imposed a contractual duty on itself by adopting that policy. Id. at 93-94. The court held the policy on which the employee relied "expressly created a duty on the part of the employer to do certain things before discharging someone, even though Appellees had the right to discharge an employee at any time or for any reason." Id. at 92. Thus, the procedures specified in the policy statement did not create a legitimate entitlement to continued employment, but the written policy did create a contractual right to the procedures themselves. Together, the Hinson and Moore decisions persuade us that Oklahoma law requires us to consider the express terms of an employment policy contained in a personnel manual--nothing more, nothing less--in determining whether Carnes has a property right protected by the due process clause.
 
 
 27
 Here, the Hospital's personnel manual provides some grounds for termination as did the manual in Hinson. These grounds include insubordination, refusing to complete assigned schedule, walking off the job without the approval of an immediate supervisor, refusing to obey orders of supervisory personnel, and failing to report to work for two successive scheduled days without the approval of an immediate supervisor. The manual does not expressly state discharge is allowed only for cause. However, the manual notes "the Administration, Department Heads and supervisors may [emphasis added] carry out disciplinary action towards an employee for just cause." As the Oklahoma Supreme Court's holding in Hinson requires, we cannot imply from a list of grounds for termination or a simple reference to possible disciplinary action any contractual right promising continued employment.
 
 
 28
 Moreover, the manual expressly indicates that an employee who violates certain provisions of the rules will be immediately terminated. The manual warns that "refusal to complete [an] assigned schedule or walking off the job without approval of [an] immediate supervisor" is a breach of the Hospital's rules and regulations that may result in immediate discharge without warning after the first offense. The manual later repeats that insubordination is cause for immediate discharge. The record indicates, and Carnes concedes, she was terminated for insubordination and failing to appear for work as her schedule required. Because the Hospital's personnel manual specifically tells employees they may be discharged immediately for either offense and makes no other promises about job tenure, we are convinced Carnes cannot claim the manual created a property right in continued employment. We hold as a matter of law that Carnes does not have a legitimate claim of entitlement to continued employment based on the Hospital's personnel manual. She has no property right protected by the fourteenth amendment and no basis for a section 1983 action.
 
 
 29
 We are convinced, however, that Oklahoma courts would enforce Carnes' right to the grievance procedures outlined in the personnel manual as part of the employment contract between the Hospital and Carnes. See Moore, 792 P.2d at 93. Although procedural protections themselves are not sufficient to create a property interest in continued employment, they can sustain an entitlement to the procedures themselves. Vinyard II, 728 F.2d at 432 n. 15 (citing Asbill v. Housing Auth., 726 F.2d 1499, 1501-02 (10th Cir.1984)).
 
 
 30
 The record indicates, and Carnes concedes, the Hospital provided her with the three-step procedure outlined in the Fair Treatment Policy. Rosenthal, Carnes' immediate supervisor and the radiology department head, contacted her soon after their argument to suggest a meeting to settle the dispute. The fact Carnes refused to speak with Rosenthal does not negate the Hospital's good faith attempt to offer Carnes steps one and two of the procedure. Carnes also met with the administrator of the Hospital, Ron Parker, thereby satisfying step three of the grievance procedure. Because the radiology department is not under the supervision of an assistant administrator, the possible fourth stage of the procedure does not apply.
 
 
 31
 The Hospital went beyond the procedures in the manual by providing Carnes with further opportunities to resolve the dispute and remain a Hospital employee. Two members of the board of trustees met with Carnes and listened to her version of the conflict with Rosenthal. Carnes later presented the matter to the entire board of trustees. Carnes discussed her dismissal with Parker and Rosenthal together following the board meeting. Rosenthal even offered Carnes another position in the radiology department. We are convinced the Hospital gave Carnes all the process to which she was entitled based on the personnel manual plus much more. Under the facts of this case, neither the fourteenth amendment due process clause nor the Hospital's employment manual offers Carnes any more procedural protection before or after termination than she received.
 
 
 32
 Carnes contends our prior decision in Vinyard II recognizes a "general" property right in public employment that is constitutionally protected. We disagree. In Vinyard II, we noted that "[i]n Oklahoma the provisions of an employee handbook can constitute a contract between the employer and employee and define the employer-employee relationship for as long as those provisions are in effect and the employee provides consideration for the benefits provided by the handbook." 728 F.2d at 432 (emphasis added). This statement of Oklahoma law is consistent with our holding today recognizing no basis for a property right in public employment based on an employer's personnel manual when that manual does not expressly promise discharge only for cause.[2] Further, in Vinyard II we held the plaintiff was entitled to fourteenth amendment due process protections based on an employer's personnel manual that expressly stated a permanent employee "may not be discharged without cause." Id. Although we were able to conclude in Vinyard II the personnel manual promised discharge only for cause, we are convinced the opposite result is warranted here because we cannot construe the manual as incorporating such a promise.
 
 
 33
 Carnes also contends she has a legitimate claim of entitlement to continued employment based on a "general" property right recognized by the Oklahoma Supreme Court during the 1930s in Nation v. Chisolm, 154 Okl. 50, 6 P.2d 766 (1931). However, as we already pointed out in Vinyard v. King, 655 F.2d 1016, 1019 (10th Cir.1981) (Vinyard I ), "the very broad language of Nation that purports to recognize such a right in employment cases is at most dicta." (citing Taylor v. State ex rel. Rutherford, 291 P.2d 1033 (Okla.1955).
 
 
 34
 We hold as a matter of law the Hospital did not violate Carnes' constitutional rights because she did not have a property interest in continued employment under Oklahoma law based on the Hospital's personnel manual. We REVERSE the district court's order on the motion for a directed verdict on the due process issue and do not address the merits of the defendants' other arguments. We also DISMISS as moot the motion for certification. We REMAND with instructions to the district court to enter a judgment consistent with this opinion.
 
 
 
 [1]
 We note the Hospital's radiology department is not under the supervision of an assistant administrator. Therefore, Carnes would have to proceed to Step III-B
 
 
 [2]
 This interpretation of Oklahoma law is consistent with at least two of our decisions on closely related issues. In Poolaw v. City of Anadarko, 660 F.2d 459, 463 (10th Cir.1981), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985), we held a city charter that specifically states a policeman may not be discharged without cause and establishes an independent review procedure gives a policeman a legitimate expectation of continued employment supporting a due process claim brought under section 1983. Also consistent with our view of Oklahoma law is our decision in Graham v. City of Oklahoma, 859 F.2d 142, 146 (10th Cir.1988). In that case, we held a city charter expressly stating that "removals and demotions shall be made solely for the good of the service" and granting full discretion in employment matters to the city manager does not create a property interest in continued employment for city employees