**William A. PIPKIN, Plaintiff,**

v.

**The CITY OF MOORE, OKLAHOMA, a municipal corporation; Moore Public Works Authority, a public trust; Lewis Kindrick, Willie Edwards, as members of Moore City Council, and Robert W. Swanagon, individually and as City Manager of the City of Moore, Defendants.**

No. CIV–89–1534–A.

United States District Court, W.D. Oklahoma.

April 16, 1990.

Fielding D. Haas, Norman, Okl., Steve Estes, Moore, Okl., for plaintiff.

Jim T. Priest, Edward D. Hasbrook, McKinney Stringer & Webster, Oklahoma City, Okl., for City of Moore and Moore Public Works Authority.

William Federman, Rodney Heggy, Oklahoma City, Okl., for Willie Edwards.

John W. Coyle, III, David Henry, David McKenzie, Oklahoma City, Okl., for Louis Kindrick.

Charles Watts, Looney Nichols Johnson & Hays, Oklahoma City, Okl., for Robert W. Swanagon.

## ORDER

ALLEY, District Judge.

The defendants collectively have moved the Court for summary judgment pursuant to Rule 56, F.R.Civ.P., with respect to all of plaintiff's claims. Plaintiff has filed a Cross–Motion for Summary Judgment with respect to the same issues. Additionally, the defendant, Robert W. Swanagon, has filed his Motion for Summary Judgment on the issue of his qualified immunity. The Court will GRANT summary judgment in favor of the defendants and against the plaintiff on its motion; the Court will DENY plaintiff's Cross–Motion for Summary Judgment against the plaintiff and in favor of the defendants; and defendant Robert W. Swanagon's Motion for Summary Judgment on the issue of qualified immunity will be deemed moot. These determinations are made for the reasons set forth *infra*.

The plaintiff, William A. Pipkin, was engaged to perform routine legal services for the City of Moore and the Moore Public Works Authority ("MPWA") on a part-time basis in 1973. From time to time thereafter, plaintiff also performed special legal services for the MPWA, primarily in connection with MPWA bond issues. In 1985, defendants contend the arrangements with plaintiff for special legal services associated with MPWA bond issues were terminated. By letter dated May 7, 1987, City Manager Swanagon terminated the plaintiff with respect to routine legal services, noting his (Swanagon's) intention to reorganize the City Attorney's Office to provide for one full-time city attorney. Plaintiff's termination gave rise to the claims made herein, which claims have been submitted to the Court for summary adjudication under Rule 56, F.R.Civ.P., on cross-motions.

### I.

The facts presented to the Court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Education v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. The Court is precluded from granting summary judgment where there is genuine dispute as to a fact which is material, that is, a fact which is relevant under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entitlement to judgment as a matter of law." *Id.* at 248, 106 S.Ct. at 2510. Moreover, entry of judgment is mandated against a party, after adequate time for discovery and upon motion, who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is upon this standard of review that the Court relies in making its determination herein.

### II. *Plaintiff's Claim Under 42 U.S.C. § 1983*

A public employee facing discharge is entitled to the safeguards of procedural due process only if he can demonstrate that the termination implicates a property or liberty interest protected by the Due Process Clause; if a property or liberty interest is not implicated, 'he must settle for whatever procedures are provided by statute or regulation.' *Developments in the Law—Public Employment*, 97 Harv.L.Rev. 1161, 1781 (1984).

*Sipes v. United States*, 744 F.2d 1418, 1420 (10th Cir.1984). Thus, the plaintiff's due process claim is dependent upon the existence of the substantive interest claimed to be protectible. The plaintiff herein claimed a protectible property interest in that he was entitled to continued employment as City Attorney by the City of Moore, Oklahoma.

Determination of whether a plaintiff has a property interest is a question of state law. *Bishop v. Wood*, 426 U.S. 341,

344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The plaintiff must demonstrate under Oklahoma law that he had a "legitimate claim of entitlement to continued employment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564 at 577, 92 S.Ct. 2701 at 2709, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Dickeson v. Quarberg,* 844 F.2d 1435, 1437 (10th Cir.1988) (citations omitted).

█ Defendants cite the Court to Moore Charter Section 8–1 which provides as follows:

> Appointments and promotions in the service of the City shall be made solely on the basis of merit and fitness; and removals, demotions, suspensions, and layoffs shall be made *solely for the good of this service.* The Council, consistently with this Charter, by ordinance or personnel rules, may regulate personnel matters and provide for proper personnel administration. (Emphasis supplied)

Construing Oklahoma law, both state and federal courts have held that the underscored language does not confer a property interest in employees. *See Graham v. City of Oklahoma City,* 859 F.2d 142, 146 (10th Cir.1988); *Meder v. City of Oklahoma City,* 672 F.Supp. 500, 501–02 (W.D. Okla.1987), *aff'd,* 869 F.2d 553 (10th Cir.

1989); *Hall v. O'Keefe,* 617 P.2d 196, 198–200 (Okla.1980); *Estes v. City of Moore, et al.,* U.S.D.C. W.D. Okla., Case No. CIV–88–737–A, 1989 WL 207910.

Plaintiff, relying on the provisions in Moore Charter Section 8–1 relating to *regulation of personnel matters,* asserts that personnel policy adopted by the City of Moore respecting pre-termination procedures conferred upon plaintiff an expectancy of continued employment. Specifically, plaintiff cites the Court to various provisions of the Moore Code and Ordinances which provide for pre-termination hearings prior to dismissal.[1]

Plaintiff argues that he was a permanent employee (as contemplated by Sec. 2–161), and entitled to expect termination only for cause with benefit of a post-termination hearing. Plaintiff further argues that "Ordinances 2–153 through 2–155 confer this permanent status upon the plaintiff." (Plaintiff's Cross–Motion for Summary Judgment, p. 12) These provisions relate to probationary periods not to exceed twelve (12) months; and thus plaintiff infers a "permanent" employment status in that his employment exceeded that length of time.

The defendants counter (Exhibit K, Defendants' Objection to Plaintiff's Cross–Motion for Summary Judgment) with evidence that the Moore City Charter Section 8–3 and Code Section 2–128[2] divide all city

---

1. Plaintiff offers Ordinance 2–158 and 2–161 as follows:

   Sec. 2–158. Separations.
   The tenure of every employee shall be conditioned on good behavior and the satisfactory performance of duties. Any employee may be temporarily separated by layoff or suspension; or permanently separated by resignation or dismissal.
   Sec. 2–161. Dismissal or demotion—Notification, etc.
   A permanent employee may be dismissed or demoted whenever in the judgment of the appointing authority the employee's work or conduct so warrants. When the appointing authority decides to take such action he shall file with the employee and the personnel board a written notification containing a statement of the substantial reasons for the action. The employee shall be notified not later than the effective date of the action. The notice shall inform the employee that he

shall be allowed ten (10) calendar days from receipt of the notice of the action to file a reply with the city clerk or the personnel board and to request a hearing before the personnel board.

2. Sec. 2–128. Classified and unclassified service pursuant to charter.
   All offices and positions of the city are divided into the classified service and the unclassified service, pursuant to Section 8–3 of the city charter.
   Section 2–129. Unclassified Service.
   The unclassified service shall include the following:
   (1) all elected officials, the municipal judge or judges, and one secretary of the municipal court.
   (2) the city manager, the assistant city manager, and a private secretary to the city manager, all personnel who serve temporarily or

positions between "classified" and "unclassified" service; and that Section 8–4 regarding removals and hearings are limited to regular, non-temporary employees in the classified service. Further evidence is submitted (Exhibit J, Defendants' Objection to Plaintiff's Cross–Motion for Summary Judgment) from plaintiff's personnel records evidencing plaintiff's "unclassified" status. This evidence is persuasive that plaintiff, William A. Pipkin, was an unclassified employee.

Further, Moore Code Section *2–132* states that "[t]he *following* sections of this division apply only to the *classified* service unless otherwise specifically provided." (emphasis supplied) Thus plaintiff's reliance on 2–153, 2–155, 2–158 and 2–161 (which appear post-sequentially to Section 2–132) is misplaced. The code sections upon which plaintiff relies to assert an expectancy of continued employment are simply not material based on his "unclassified" status as a temporary employee of the City of Moore. Plaintiff was promised nothing.

Therefore, as to plaintiff's claim of deprivation of due process pursuant to 42 U.S.C. § 1983, summary judgment is GRANTED in favor of the defendants and against the plaintiff in that plaintiff has presented no evidence which supports the assertion that he had a constitutionally protected right to continued employment.

### III.

■ The above analysis is equally applicable to plaintiff's claim of wrongful discharge under Oklahoma law. The Court need not address the "contractual" implications of Sec. 2–158 and Sec. 2–161, *supra*, note 1, for these provisions are inapplicable

> part-time; and when the city has over fifty-thousand (50,000) people, department heads and one secretary for each such head, if any. (3) volunteer personnel and personnel appointed to serve without pay. (4) consultants and *counsel rendering temporary professional service.* (emphasis supplied)

**3.** From the Moore City Code:
Sec. 2–133. Program to be administered by city manager.

to plaintiff by virtue of his "unclassified" status under Charter Section 8–3 and Code Section 2–129. *See supra,* note 2.

■ Plaintiff was employed on a part-time, unclassified, temporary basis; and his continued employment was subject to the will of the City Manager. An at-will employee asserting wrongful discharge must establish a public policy tort exception to the "at-will" doctrine or an implied contract that restricts the employer's power to discharge the employee. (The Oklahoma Supreme Court, in *Hinson v. Cameron,* 742 P.2d 549, 554 (Okla.1987) declined "to impose upon the employer a legal duty not to terminate an at-will employee in bad faith.) The plaintiff has wholly failed to establish such a claim. Moore Code Sec. 2–73 provides as follows (Exhibit C, Defendant Swanagon's Brief in Support of Motion for Summary Judgment):

> The city attorney shall be entitled to engage in the private practice of law to the extent that the same does not interfere with or conflict with his duties as city attorney, and such attorney may be retained on a part-time or consulting basis, *as the city manager determines.* (emphasis supplied)

This is consistent with Robert W. Swanagon's Affidavit (Exhibit E, Defendant's Brief in Support of Motion for Summary Judgment) which states at ¶ 7 as follows: "I had the power and authority as the appointed and acting city manager to terminate plaintiff from his positions as the City and MPWA attorney." [3] This is precisely what the City Manager did; and the law demands, absent requisite proof establishing wrongful discharge, that Mr. Swanagon's decision to terminate plaintiff be honored.

> The personnel program established by this division shall be administered by the city manager or such persons as designated by him—the city manager or such designated person shall:
> (1) ...
> (2) Administer all the provisions of this division and of the personnel rules, and all applicable sections of this division and the city charter.
> (3) ...

Plaintiff has presented no evidence to support a wrongful discharge claim under state law. Therefore, the Court GRANTS summary judgment in favor of defendants and against the plaintiff on this claim.

## IV.

■ The plaintiff, on cross-motion, seeks summary judgment on the issue of an alleged actionable conspiracy by the defendants Swanagon, Kindrick, and Edwards to terminate the plaintiff's employment. The plaintiff cites as authority for this cause of action, *Dill v. Rader*, 533 P.2d 650, 652 (Okla.App.1975), which states that "[t]wo or more persons may involve themselves in a conspiracy by agreeing either to achieve an unlawful objective, or a lawful objective by unlawful means." (citation omitted) Plaintiff in his brief (Plaintiff's Cross–Motion for Summary Judgment, p. 18), states that "[t]he unlawful means used involved the defendants' agreement, in violation of the Open Meeting Act, 25 O.S. § 301, *et seq.*, to hire Swanagon as City Manager, which occurred on May 4, 1987, at a city council meeting." This argument is *non sequitur*. All argument by the plaintiff relates to alleged violations of the Open Meeting Law[4] *in the replacement of the City Manager*—not in the reorganization of the City Attorney's office or the elimination of the plaintiff's position. The only cogent inquiry with respect to conspiracy is whether there was an agreement to achieve an unlawful termination of the *plaintiff* or a lawful termination of the *plaintiff* by unlawful means. Plaintiff has not submitted evidence of conspiracy with respect to his termination. No further comment is required.

The Court DENIES the Cross–Motion for Summary Judgment filed by the plaintiff herein on the issue of conspiracy in favor of the defendants and against the plaintiff.

## V.

The Court next considers plaintiff's claim for compensation for legal services which were performed in connection with the MPWA's issuance of municipal bonds in June, 1985, for which plaintiff seeks $88,-333 and November, 1985, in which plaintiff seeks $89,719; and considers plaintiff's further claim for compensation arising from the MPWA's November, 1985 sale of the Moore Hospital, in the amount of $52,500.

The plaintiff asserts that, as with his employment relationship with the City of Moore, this continuing relationship with the MPWA was terminable only in accordance with provisions of the city charter, city ordinances, and personnel rules and regulations which constituted the terms of his employment. As noted, *supra*, the plaintiff's status as an "unclassified employee" precludes this argument.

■ The plaintiff further asserts that in relation to the MPWA, the parties (Pipkin

---

4. The Court observes, however, that the Agenda for the May 4, 1987, meeting of the Moore City Council and Findings and Orders of the Moore Personnel Board (Exhibit G and H, Defendants' Brief in Support of Motion for Summary Judgment, and Exhibit 4 (Videotape), Plaintiff's Brief in Support of Cross–Motion) indicate, contrary to plaintiff's assertion, that notice of the board's action regarding Swanagon was given.

Item 24 of the Agenda states:

24. Consider and Act on Adoption or Rejection of the Findings and Orders of the Moore Personnel Board dated October 23, 1986, In the Matter of Robert W. Swanagon Appeal From Termination For Cause as City Manager and Authority Manager, Respectively of the City of Moore and the Moore Public Works Authority.

INFORMATION: Attachment no. 4 is the Moore Personnel Board Findings and Orders dated October 23, 1986.

ACTION: Adopt or reject the Finding and Orders of the Moore Personnel Board, dated October 23, 1986, in its entirety.

The Findings and Orders of the Personnel Board, dated October 23, 1986, included in pertinent part that "Robert Swanagon *is reinstated* to his former status as City Manager of the City of Moore and the Authority Manager of the Moore Public Works Authority, on leave with pay ..." (emphasis supplied)

Further, the Minutes of the May 4, 1987, Council's Action on Item 24 (Exhibit H, Defendants' Brief in Support of Motion for Summary Judgment) indicated a motion passed reinstating Robert W. Swanagon "effective immediately at 8:30 a.m. tomorrow morning."

Robert Swanagon was City Manager on the date of plaintiff's termination—May 7, 1987, with authority to act.

and the MPWA) had a "clear agreement as evidenced by their course of dealing and conduct for twenty-two years, that as part and parcel of his compensation for being general counsel to the MPWA, Pipkin would receive one-third of the fees paid for financial legal consulting services." (Plaintiff's Cross–Motion for Summary Judgment, p. 7). As to the June 1985 and November 1985 bond work upon which plaintiff bases his claims, the defendants offer plaintiff's testimony by deposition (Tr. p. 95–96) as follows:

Q: How was your agreement for services that you performed on that [the June, 1985] bond issue formalized?

A: It wasn't. Prior to that bond issue, for twenty years I had received portion of the legal bond counsels fee. Abruptly in June of 1985, that stopped, you know, I didn't know that I wasn't to be paid until I was told the night they were going to fire—day or two before they were going to pass the bonds by Paul Johanning that I wasn't going to be paid anything out of those bonds.

Q: You said that this was—you learned this several days before the bond issue was to be approved by the council.

A: A few days before, as I recall. I don't remember exactly.

Q: Had you already performed the services that you were going to perform—

A: No, ma'am.

Thus, by Pipkin's own testimony, he admits that he had been informed that his services would not be needed on the June 1985 and subsequent bond issues[5], and was so informed prior to his rendering of services for which compensation is claimed.

■ As to plaintiff's claim for compensation relating to the November, 1985 sale of the Moore Hospital (and consistent with the bond claims discussed above)—no evidence is submitted which even *intimates* that plaintiff was entitled to compensation. Plaintiff submits (1) a resolution of the MPWA employing one Paul Johanning, Attorney at Law, to assist in the preparation of documents associated with the sale (Exhibit 2, Plaintiff's Brief in Support of Cross–Motion for Summary Judgment); and (2) a closing order of the MPWA authorizing payment of fees to Paul Johanning, Attorney at Law (Exhibit 3, Plaintiff's Brief in Support of Cross–Motion for Summary Judgment). Neither document so much as mentions plaintiff's name.

■ Plaintiff has presented no authority excluding or exempting attorneys in public employment from the strictures of the Code of Professional Responsibility (*supra*, note 5); and it is the view of this Court that it would be against public policy to set apart attorneys employed in public service from compliance therewith. If a client determines that an attorney's services are no longer needed, for whatever reason, that client is unquestionably entitled to discharge the attorney. It is for the protection of the client—not the attorney—that the Code of Professional Responsibility requires mandatory withdrawal from representation in the event of discharge. "Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves." OKLA. STAT. ANN. title 5, Ch. 1, App. 3–A, Preamble: A Lawyer's Responsibilities (West 1984 & Supp.1990).

This is consonant with the Oklahoma Supreme Court's observation in *White v. American Law Book Co.*, 106 Okl. 166, 233 P. 426, 427 (1924), as follows:

The relationship of attorney and client is one of reliance, trust and confidence. When any element of this relationship is destroyed, for whatever reason, the client has the absolute right, in the interest of his own welfare, to discharge the attorney.

---

**5.** In this regard, the Court notes the provisions of OKLA. STAT. ANN. title 5, Ch. 1, App. 3, DR 2–111(B)(4) (West 1984) concerning mandatory withdrawal from employment.

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by the rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

.    .    .    .    .

(4) He is discharged by his client.

Therefore, the defendants' motion for summary judgment on the plaintiff's claims relating to compensation with respect to MPWA special projects will be GRANTED.

## VI. *Conclusion*

In view of the foregoing, the defendants motion for summary judgment on all issues is GRANTED. The plaintiff's cross-motion for summary judgment on all issues is DENIED. Defendant Robert W. Swanagon's motion for summary judgment is deemed moot. Judgment will be entered in favor of the defendants and against the plaintiff.

It is so ordered.